[No. 26863. Department One. January 19, 1938.]

TERESA SELLS KING, *Respondent*, v. MARY C. SELLS, *Appellant*.

ROSEMARY SELLS, *a Minor, by C. J. Sells, her Guardian Ad Litem, Respondent*, v. MARY C. SELLS, *Appellant*.[1]

STEINERT, C. J., dissents.

*Roswell J. Quinn,* for appellant.

*Cecil C. Hallin,* for respondents.

MAIN, J.—These two cases were consolidated for trial in the superior court. The defendant in each case is the same. The purpose of each action was to recover the sum of four hundred dollars. The cases were tried to the court without a jury, and resulted in separate findings, conclusions of law, and judgments. The judgment in each case was in the sum of four hundred dollars in favor of the plaintiff, and from the judgments

[1]Reported in 75 P. (2d) 130.

entered the defendant appeals. The cases have also been consolidated for appeal.

More than twenty years ago, Mary C. Sells and C. J. Sells were married. For a time, they lived in the state of Minnesota, and there were four children, two daughters and two sons. From time to time, the father gave to the daughters small sums of money, or items of property which the mother converted into money, and these items, together with gifts from other persons, were handled by the mother. In the course of time, the gifts had reached such an amount that the mother invested six hundred dollars of the girls' money in seven per cent bonds of the General Electric Company of Minneapolis. Subsequently, the parties moved to Longview, Cowlitz county.

In 1928, the appellant, the mother of the girls, exchanged the investment in the General Electric Company bonds for bonds in the Kentucky Fuel Gas Corporation, which were of the value of ninety-eight cents on the dollar and paid six and one-half per cent. A year or so later, she made another investment of one hundred dollars in this company. The bonds, at the time this case was tried, were of the value of fifty dollars. When the appellant changed the investment from the General Electric Company of Minneapolis to the Kentucky Fuel Gas Corporation, she relied solely upon the salesmen who came to Longview representing a bond house in the city of Portland, and she also says that she consulted a lady who, so far as the evidence shows, had no knowledge of the value of bonds.

About 1932, the appellant and her husband were divorced. The custody of the two girls was awarded to the father, and the custody of the boys to the mother, the appellant. In 1936, the girls visited their mother, who was then living in Portland, and at that time the appellant stated that she owed each of them four

hundred dollars and indicated the ways in which she expected to pay it. Sometime later, the respondents made demand for these respective amounts of money, and, the appellant not responding, the present actions were instituted. The mother at no time was appointed by any court as the guardian of her two daughters.

The question is whether the mother, in selling the electric company bonds, which were worth par and paying seven per cent per annum, and investing the proceeds in the Kentucky Fuel Gas Corporation bonds, acted with the same degree of care as a reasonably prudent person would use in his or her own affairs. In determining this question, we shall first assume, without so deciding, (a) that the appellant was a natural guardian of her two daughters and the proper custodian of their property; (b) that she was a *de facto* guardian; (c) that the duties of a *de facto* guardian are measured by the same standard as a legally appointed guardian; (d) that the investment of a ward's funds in bonds of a corporation may, in certain instances, be proper; and (e) that a regularly appointed guardian, unless the statute provides otherwise, may make investments without an order of the court.

Giving effect to these assumptions, as already indicated, we come to the question of whether the appellant acted as a prudent investor would. In the case of a legally appointed guardian, such a guardian, in making investments, must act, as already indicated, as a reasonably prudent person would act in his or her own affairs. In investing the trust funds of the ward, the element of speculation is forbidden. 12 R. C. L. 1131; 28 C. J. 1141.

In addition to what has been said, the appellant gave no attention to the matter of changing the investment and preserving what she could out of it after she became aware, or should have become aware, that the in-

vestment in the Kentucky Fuel Gas Corporation was a losing venture, as it was her duty to do. *In re Carlson,* 162 Wash. 20, 297 Pac. 764.

The findings of fact in each case are substantially the same, and in one of them it was stated:

"That the defendant was never appointed guardian of the plaintiff or her sister, Rosemary Sells. That defendant assumed guardianship over the property of her said minor children and made loans from their estate without authority of the court. That defendant did not exercise sound discretion and prudence in making said investments. Defendant exchanged good paper drawing 7% interest for bonds worth 98c on the dollar, drawing 6½% interest. Defendant failed to make inquiry of any one except the one from whom she pur· chased said bonds, except a lady who had no knowledge of the value of the paper. After making said purchases, defendant did nothing towards watching the market or otherwise trying to save the investment or any part of it."

The conclusions of the trial court, as indicated by this finding, are the only ones which can be reasonably drawn from the evidence and with which we are in entire accord.

The judgment in each case will be affirmed.

GERAGHTY, HOLCOMB, and SIMPSON, JJ., concur.

STEINERT, C. J. (dissenting)—I do not believe that appellant should, under the peculiar facts of this case, be held to have been negligent either in making the exchange of bonds or in failing later to dispose of the second investment.

I do not think that parents having in their possession small amounts of money which they themselves from time to time have given to their children should be held to the strict obligations required by the law with reference to investments made by guardians. Furthermore, the difference in value between the two investments in

this case was originally so slight that it should not be said that it was negligence to exchange the one for the other.

I also think it unreasonable to require a person, situated as the appellant in this case was, to watch the daily market quotations in order to see whether the value of a security purchased is rising or falling. Everyone is familiar with the drastic declines in all investment securities between 1929 and 1932, the period in which the value of the investment in this case shrunk. A similar situation, though possibly to a lesser extent, obtains even now with reference to the value of securities. But if everyone holding stock or bonds at the present time were to attempt to get rid of them merely because there had been a drop in values, few securities would be held for investment. And if everyone were bent on selling, who would there be to buy? After the results of a financial crisis have been demonstrated, it is quite easy to see what one should, or might, have profitably done, but it is quite a different thing to know what to do at the moment that an emergency arises or to forecast the length of a period of depression.

I dissent.