Dorothy L. DENNIS, Robert Dennis, and Dorothy L. Dennis and Robert Dennis, as Parents and Next Friends of Tyresa Dennis, a minor, Plaintiffs,

v.

Louis Lee WALKER and Thomas H. Jackson, Defendants.

Civ. A. No. 521–67.

United States District Court District of Columbia.

May 9, 1968.

Allan L. Kamerow and Delores Trojnar, Washington, D. C., for plaintiffs, for the motion.

Albert E. Brault, Washington, D. C., for defendants, opposed.

## OPINION

HOLTZOFF, District Judge.

The question presented in this case is whether a defendant sued by a minor for personal injuries claimed to have been caused by the defendant's negligence may maintain a claim for contribution against the plaintiff's parents, on

the ground that the parents were joint tort feasors in that their negligence was also one of the proximate causes of the plaintiff's injuries.

The question arises out of the following facts. The minor plaintiff Tyresa Dennis was a passenger in an automobile driven by her mother, the plaintiff Dorothy L. Dennis, and owned by her father, the plaintiff Robert Dennis. The vehicle is said to have been in a collision with another automobile driven by the defendant Louis Lee Walker and owned by the defendant Thomas H. Jackson. All three occupants of the plaintiff's vehicle brought suit against the defendants on the ground that the injuries sustained by them were caused by the negligence of the defendant Louis Lee Walker. In their answer to the complaint the defendants interposed a counterclaim for contribution against the adult plaintiffs, asserting that injuries sustained by the minor plaintiff were caused, in part at least by the contributory negligence of the adult plaintiffs.[1]

■ The plaintiffs move for summary judgment[2] on the ground that no claim for contribution may be maintained by the defendants against the infant plaintiff's parents because parents were immune from suit by their minor unemancipated child. They contend further that the right of contribution as between joint tort feasors is limited in the District of Columbia to a tort feasor who is jointly liable with the defendant to the original plaintiff. Counsel for the defendants responds by urging this Court to adopt what he argues is the more progressive doctrine, namely, that the immunity of parents from suit in

tort by their infant children should be abrogated.

■ We shall consider separately the major and the minor premises of this syllogism. Taking up first, the minor premise, the problem is whether immunity of parents to suit in tort by their minor children should be adopted or rejected in the District of Columbia. We find that this question has never been authoritatively determined in this jurisdiction. In the absence of any appellate court decision, this Court is, of course, free to initiate and adopt a rule in the first instance. In fact, in bygone days, the common law developed very largely from decisions by trial judges. In view of the importance of this question, this Court found it desirable to make an independent study of the subject.

The common law originally did not recognize any parental immunity from suit in tort by a minor unemancipated child. It developed in this country toward the end of the Nineteenth Century. The earliest decision appears to be that of the Supreme Court of Mississippi. In Hewellette v. George, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682, the Court indicated that no action for damages in tort may be maintained by a minor child against a parent so long as the latter was under obligation to care for, guide and control the child. The Court added that the peace of society and of families, as well as a sound public policy designed to subserve the repose of families and the best interests of society, bar the minor child from asserting a claim to civil redress for personal injuries suffered at the hands of

---

1. The counterclaim also requests indemnity if it appears that the minor plaintiff's injuries were caused by the sole negligence of the adult plaintiffs. The issue presented here is merely the right to maintain the claim for contribution, and this opinion will be limited to that question. Actually, there can be no indemnity in such a case, since if the plaintiff's injuries were caused solely by the negligence of her co-plaintiffs, the defendant would

have a complete defense to the action in the first instance.

2. Strictly speaking the plaintiffs' motion should have been one to dismiss the counterclaim for failure to state a claim for which relief can be granted, Rule 12(b) Federal Rules of Civil Procedure. The Court will, however, ignore differences in nomenclature and will treat the plaintiffs' motion as though it were in fact a motion to dismiss the counterclaim.

the parent. Many other States followed and reached the same result. Among the numerous decisions on this point are Norfolk So. Railway Co. v. Gretakis, 162 Va. 597, 174 S.E. 841; Purcell v. Frazer, 7 Ariz.App. 5, 435 P.2d 736; Downs v. Poulin (Me.) 216 A.2d 29. One of the latest cases is Badigian v. Badigian, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E. 2d 718, where the immunity of a parent against suit for damages in tort on the part of a minor child is reasserted. Chief Judge Desmond in the majority opinion referred to the settled New York rule that an unemancipated minor child has no right of action against his parents for non-wilful injuries, and made the following pointed observations (p. 474, 215 N.Y.S.2d p. 36, 174 N.E.2d p. 719):

> "It is a direct application of a concept that cannot be rejected without changing the whole fabric of our society, a fundamental idea that is at the bottom of all community life. The basic principle is that children and parents form a unique kind of social unit different from all other groups."

A vigorous dissenting opinion was written by Judge Fuld, who ably aligns the arguments in favor of an abolition of the immunity, but he stood alone.

Special attention should be directed to the law of Maryland, in view of the fact that the District of Columbia, having been carved out of Maryland, derives its common law from that State. This point was not determined by any decision of the Court of Appeals of Maryland until 1950. It is interesting to observe, however, that previously the Court of Appeals for the District of Columbia was confronted with this question under the law of Maryland, Villaret v. Villaret, 83 U.S.App.D.C. 311, 169 F.2d 677. On a thorough review of the law of that State on cognate topics, the Court of Appeals in an opinion by Judge Wilbur K. Miller reached the conclusion that the law of Maryland would adopt the rule of parental immunity and would not permit a minor child to maintain an action against a parent for damages for personal injuries caused by the parent's negligence. This decision proved to be prophetic. Subsequently, in Mahnke v. Moore, 197 Md. 61, 77 A.2d 923, the Court of Appeals of Maryland reached that conclusion and formally adopted the doctrine, that a parent is not liable to damages to a child for a failure to perform a parental duty. At the same time it adopted an exception which will be hereafter discussed.

Certain limitations, which are not applicable to the case at bar, have been developed to the rule of parental immunity. First, the immunity does not extend to a parent's wanton or wilful misconduct, Badigian v. Badigian, 9 N.Y. 2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718; Cowgill v. Boock, 189 Or. 282, 218 P.2d 445, 19 A.L.R.2d 405; Nudd v. Matsoukas, 7 Ill.2d 608, 131 N.E.2d 525; Teramano v. Teramano, 6 Ohio St.2d 117, 216 N.E.2d 375; Rodebaugh v. Grand Trunk Western R. R. Co., 4 Mich.App. 559, 145 N.W.2d 401; Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193; Aboussie v. Aboussie (Tex.Civ.App.), 270 S.W. 2d 636; Mahnke v. Moore, supra. Second, the immunity does not apply if the child's injuries occurred while the parent was engaged in a business or employment not connected with his parental duty, Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149; Trevarton v. Trevarton, 151 Colo. 418, 378 P.2d 640; Pullen v. Novak, 169 Neb. 211, 99 N.W.2d 16; Lusk v. Lusk, 113 W.Va. 17, 166 S.E. 538. Third, the immunity is not applicable to actions brought against the estate of a deceased parent, or on behalf of the estate of a deceased minor child, Palcsey v. Tepper, 71 N.J.Super. 294, 176 A.2d 818; Parks v. Parks, 390 Pa. 287, 135 A.2d 65; Harlan National Bank v. Gross (Ky.) 346 S.W.2d 482; Oliveria v. Oliveria, 305 Mass. 297, 25 N.E. 2d 766.

Only two States have affirmatively declined to adopt the doctrine of parental immunity *in toto:* New Hampshire, Briere v. Briere, 107 N.H. 432, 224 A.2d 588; and Alaska, Hebel v. Hebel, 435

P.2d 8. Possibly Vermont may also be in that group, as was indicated by the United States District Court for that District, Xaphes v. Mossey, 224 F.Supp. 578.

Thus the overwhelming weight of authority in this country favors parental immunity as to suits in tort by a minor unemancipated child, with certain exceptions which do not apply to the instant case. It is also necessary to give some consideration to the policy of the theory of immunity. The basis of the doctrine is to protect parental discipline, domestic felicity, and family tranquility and concord. It is argued by the opponents of the rule that these purposes are not realistic. Attention is directed to the fact that an unemancipated child may sue a parent for breach of contract as well as in a controversy over title or possession of property and that, therefore, no reason is perceived for not permitting suits in tort. It is also urged that modern developments lead to widespread use of liability insurance. The result is said to be that most actions for personal injuries are actually defended by counsel for an insurance company and in fact the very bringing of such an action is frequently motivated by the existence of such insurance.

■ The last argument, however, is a double edged sword. It is indeed a fact that a great majority of actions for personal injuries, especially those arising out of automobile accidents, are defended by counsel for liability insurance companies and involve cases covered by liability insurance. This very fact, however, is an argument against the abolition of the principle of immunity. The presence of liability insurance in such instances may lead to fraud, or at least collusive, or at best friendly suits. A parent may encourage his minor child to bring such an action against him. This is not a far-fetched possibility. Not only is it contrary to good faith but it also has the tendency of promoting cynicism and lack of integrity on the part of the child. The law should not encourage such activities. The parent in such a situation may be at times tempted to bring such a suit, because the judgment, if any, would have to be paid by the insurance company. He is likely to put himself into a position of conflict of interest for he probably would not lend that cooperation to the insurance company, which his policy requires. Both on principle and authority this Court reaches the conclusion that the law of the District of Columbia should adopt the doctrine of parental immunity against suit in tort on the part of a minor unemancipated child, subject, however, to the exceptions heretofore enumerated, none of which are applicable to the instant case.

We may now revert to the major premise of the syllogism, namely, the scope of the right of contribution. Should the right of contribution be limited to cases in which both the defendant and the person from whom contribution is sought are joint tort feasors and are also jointly liable to the plaintiff? Or, does the right of contribution extend to all cases of joint tort feasors, even though because of some bar such as immunity or the statute of limitations, the person against whom contribution is sought is not subject to liability to the plaintiff? Applying the problem specifically to the instant case, does the fact that parental immunity saves one joint tort feasor from liability to the plaintiff, likewise liberate him from the duty to pay contribution to the other joint tort feasor?

■ The District of Columbia is one of those progressive jurisdictions in which the common law rule that precluded contribution between joint tort feasors, was abandoned by judicial decision. It adopted the more modern doctrine which permits contribution as between joint tort feasors, except in the case of intentional and wilful wrongdoers. This epoch-making and far-reaching step was taken in 1942 by the decision in George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219, in which the opinion was written by Chief Justice Groner. Vinson, J., later Chief Justice of the United States,

concurred, but Edgerton, J., dissented. Chief Justice Groner, summarized his discussion as follows (p. 191, 126 F.2d p. 223):

"* * * we adopt for the District of Columbia the rule that when the parties are not intentional and wilful wrongdoers, but are made so by legal inference or intendment, contribution may be enforced."

There is no suggestion or intimation that contribution may not be enforced against a joint tort feasor merely because some bar such as immunity or the statute of limitations liberated him from liability to the plaintiff.

■ Such a limitation was, however, later introduced in Yellow Cab Co. of D. C. v. Dreslin, 86 U.S.App.D.C. 327, 181 F.2d 626, 19 A.L.R.2d 1001. In that case it was held that there is no right of contribution as against a tort feasor who is the spouse of the original plaintiff, because due to marital immunity, the spouse is not liable to the plaintiff. The opinion in that case assumes the proposition without, however, any discussion, that the right of contribution depends on joint liability to the plaintiff. It imports into the doctrine of George's Radio case the limitation that "an injured party plaintiff in the suit from which a right of contribution develops must have had a cause of action against the party from whom contribution is sought." The Court concluded that since the person against whom contribution was sought, was the plaintiff's husband, and because of that relation his wife, the plaintiff, had no right of action against him, there was no basis for a right of contribution. This decision has not been overruled either directly or sub silentio, and is binding on this court.

It may well be argued, however, that the right of contribution is based on a principle of equity and good conscience. Justice requires that when two or more persons by their negligence cause the plaintiff's injuries, they should share in paying the damages. If one is subject to liability for the entire amount, another should contribute his proportionate share. The mere fact that one may not be subject to liability to the injured party because of some bar, does not detract from the fact that his negligence may have been one of two or more proximate causes of the unfortunate result. If the right of contribution among joint tort feasors is to exist at all, it seems unjust to shift the entire burden on one of two joint tort feasors, merely because the other is fortunate enough to be freed from liability to the plaintiff by some extraneous principle of law.

■ There is a trend toward limiting the effect of the Yellow Cab case, as shown by a later decision in Keleket X-ray Corp. v. United States, 107 U.S. App.D.C. 138, 275 F.2d 167, in which strangely enough, Judge Edgerton wrote the opinion, even though he had dissented in the George's Radio case. In the Keleket case, an action for personal injuries was brought against two defendants, one of whom was the United States. The Federal Tort Claims Act prescribed a shorter statute of limitations in such actions against the United States than the period fixed by the general statute of limitations as to tort actions in the District of Columbia. Under the circumstances of the case, the period of limitations had run against the United States and, therefore, there could be no recovery from the United States. The period of limitations had not expired as against the other defendant. Nevertheless, the Court of Appeals held that the United States was liable for contribution and expressly distinguished the Yellow Cab case, supra. The distinction drawn was that in the Yellow Cab case, the injured party could not at any time successfully have sued the person from whom contribution was sought, whereas in the case before the Court, there had been a time when such an action could have been maintained. In allowing the right of contribution, the Court of Appeals held that so long as the person against whom contribution was sought was at any time subject to liability to the plain-

tiff, his duty to pay contribution continues, even if his obligation to the original plaintiff had become extinguished for one reason or another. It may well be that on another presentation of the matter, the Court of Appeals may overrule the *Yellow Cab Company* case, in which a conclusion was reached without a thorough discussion. In the meantime, however, the *Yellow Cab* case is binding on this Court, and no contribution may be allowed in the case at bar.

Accordingly, the counterclaim for contribution must be dismissed. Plaintiffs' motion for summary judgment is granted.