Mary **EMMERT** et al., Plaintiffs,

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**Carl Howard EMMERT, Third-Party Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**Carl Howard EMMERT, Defendant.**

**Civ. A. Nos. 2343–66, 721–67.**

United States District Court District of Columbia.

May 16, 1969.

Paul M. Parent, Silver Spring, and Patrick J. Attridge, Washington, D. C., for Mary Emmert, and others.

James T. Wharton, Rockville, Md., for Carl H. Emmert.

Henry J. Monahan, Asst. U. S. Atty., Dept. of Justice, Washington, D. C., for the United States.

## MEMORANDUM OPINION

WADDY, District Judge.

On April 16, 1965, an automobile owned and operated by Carl Howard Emmert, a Tennessee resident, collided in the District of Columbia with a motor vehicle owned by the United States and operated by a federal employee acting within the scope of his employment. Present as passengers in the Emmert vehicle were Mary Emmert, the operator's wife, and Sharon and Marilyn Emmert, the operator's minor daughters.

Pursuant to the Federal Tort Claims Act, suit was brought against the United States by Mary Emmert, individually and as mother and next friend of Sharon and Marilyn Emmert to recover for injuries and damages sustained by the three female passengers allegedly caused by the negligence of the operator of the Government vehicle. The United States has filed a third party complaint against Carl H. Emmert, the owner and operator of the Emmert vehicle for contribution in the event the Government is found liable to the minor daughters, Sharon and Marilyn Emmert.

The third party defendant has urged the doctrine of intrafamily immunity as a bar to the defendant United States' claim for contribution on the ground that the right of contribution as between joint tortfeasors in the District of Columbia is limited to tortfeasors who are jointly liable to the original plaintiff.

Having found both the defendant United States and the third party defendant, Carl H. Emmert, to have been negligent, and also having found the negligence of the United States and Carl H. Emmert to have been concurring causes of the injuries sustained by Sharon and Marilyn Emmert, the Court is now confronted with the issue of whether the United States is entitled to contribution from the third party defendant, Carl H. Emmert.

■ Under the Federal Tort Claims Act, the United States is made liable for damages for personal injuries or death caused by the negligent acts or omissions of its employees acting within the scope of their employment as if it were a private litigant, and " * * * in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Interpreting the above statutory language in Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed. 2d 492 (1962), the Supreme Court has held that in applying the "law of the place", a federal court must apply the whole law of that jurisdiction including its choice of law rules.

■ Application of choice of law rules is required not only in actions against the United States, but also as to claims for contribution asserted by the United States. Kantlehner v. United States, 279 F.Supp. 122 (E.D.N.Y.1967). Unlike as in *Kantlehner*, however, here it would appear no conflict exists between the law of Tennessee and the District of Columbia as to the substantive right of a party to seek contribution from an unintentional joint tortfeasor.[1] Thus choice of law principles are irrelevant on the threshold issue of the government's right to seek contribution.[2]

1. Both jurisdictions permit a party to enforce contribution against one who shares a common liability to the original plaintiff. District of Columbia—Yellow Cab Co. of D. C. v. Dreslin, 86 U.S.App.D.C. 327, 181 F.2d 626, 19 A.L.R.2d 1001 (1950). Tennessee—Vaughn v. Gill, 264 S.W.2d 805 (Tenn.1953) ; Smith v. Illinois Central Railroad Company, 263 F.Supp. 70 (E.D.Tenn.1967) ; Chamberlain v. McCleary, 217 F.Supp. 591 (E.D. Tenn.1963) ; Huggins v. Graves, 210 F. Supp. 98 (E.D.Tenn.1962).

2. Dovell v. Arundel Supply Corporation, 124 U.S.App.D.C. 89, 361 F.2d 543, cert. denied 385 U.S. 841, 87 S.Ct. 93, 17 L.Ed.2d 74 (1966).

■ Beyond the threshold issue of the substantive right of a party to seek contribution, there is the additional question in this case of whether a party is immune from suit in tort by his unemancipated children. Resolution of this question is crucial for, under both Tennessee and District of Columbia case law, contribution may be enforced only against a joint tortfeasor with whom there is a common liability to the original plaintiff.[3] On this issue of parent-child or intrafamily immunity, there is at least a potential conflict between the law of Tennessee and the law of the District of Columbia.

■ The doctrine of intrafamily immunity is firmly entrenched in Tennessee. As noted by the Tennessee Supreme Court in October, 1968:

Tennessee courts have consistently followed the rule that an unemancipated minor child cannot sue its parent for personal injuries.[4]

and further

The doctrine of parental immunity from actions based on ordinary negligence has long been the accepted rule in this State, and under the weight of authority a sound public policy forbids the maintenance of such an action.[5]

In the District of Columbia, however, the viability of the intrafamily immunity doctrine is tenuous at best. In Dennis v. Walker, 284 F.Supp. 413 (D.C.D.C.1968), Judge Holtzoff noted that as of the date of his memorandum opinion, the courts of this jurisdiction had never squarely decided the applicability of the common law doctrine that an unemancipated child is precluded from suing his parents in tort. After an exhaustive review of leading authorities with emphasis upon the New York case of Badigian v. Badigian, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E. 2d 718 (1961) and the Maryland case of Mahnke v. Moore, 197 Md. 61, 77 A.2d 923 (1951), Judge Holtzoff made the following pronouncement:[6]

"Both on principle and authority this Court reaches the conclusion that the law of the District of Columbia should adopt the doctrine of parental immunity against suit in tort on the part of a minor unemancipated child, subject, however, to the exceptions heretofore enumerated, none of which are applicable to the instant case.[7]

Thus the only authority in this jurisdiction which is persuasive upon this Court, and which is consistent with the law of Tennessee, would require the Court to dismiss the claim of the United States for contribution on the ground of intrafamily immunity.

The *Dennis* case, which does not appear to have been appealed, has not had occasion to be either followed or abandoned.[8] However, subsequent to Judge Holtzoff's rendering of the *Dennis* opinion, courts of other jurisdictions have continued the trend of disfavoring the doctrine of intrafamily immunity. On September 27, 1968, the Minnesota Supreme Court abrogated that state's child-parent immunity rule in negligence cases with but two exceptions.[9]

3. *Supra*, note 1.

4. Campbell v. Gruttemeyer, 432 S.W.2d 894, at 895 (Tenn.1968).

5. Id. at 900.

6. 284 F.Supp. at 417.

7. The exceptions alluded to were:
   (a) where parents' misconduct is wanton or wilful,
   (b) where child's injuries occurred while the parent was engaged in a business or employment not connected with his parental duty.
   (c) where the action is brought against the estate of a deceased parent or on behalf of the estate of a deceased minor child. 284 F.Supp. at 416.

8. In Smith v. Kelly, Civil No. 1670–67 (D.C.D.C. July 24, 1968), Judge Corcoran denied a motion for summary judgment based on the common law intrafamily immunity doctrine in a situation where the minor child was deceased and was represented by an administrator.

9. Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968). The exceptions are where the alleged negligent act involves an exercise of reasonable parental authority over the child and where the alleged negligent act involves an exer-

More significantly, in Gelbman v. Gelbman,[10] the New York Court of Appeals abolished the defense of intrafamily tort immunity for nonwilful torts. In so ruling, the New York Court of Appeals expressly overruled Badigian v. Badigian, *supra*, a case, as noted earlier, whose holding and reasoning were relied upon heavily by Judge Holtzoff in *Dennis*.

▮ The reasoning and holdings of the above-mentioned recent cases, including the overruling of *Badigian, supra*, may create some doubt as to the viability of *Dennis*. Should it be determined that *Dennis* does not state the law of this jurisdiction then a conflict would exist between the law of this jurisdiction and that of Tennessee. When such conflict exists, and when that conflict is not a "false conflict," [11] this forum must look to its choice of law principles.

▮ In harmony with the modern trends, our jurisdiction has departed from a boilerplate "lex loci delicti" approach for resolving conflict of law problems in tort cases. The flexible "issue oriented" approach now employed by this jurisdiction was succinctly set out by our Court of Appeals in Dovell v. Arundel Supply Corporation [12] where the Court stated:

> "The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied."

Intertwined with and helpful to resolving the question of which of a number of jurisdictions has "the more substantial interest" with respect to a particular issue is an analysis of the relationships of the various jurisdictions with the accident and the parties. Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense.[13]

At issue in *Tramontana* was whether a Brazilian limitation on damages recoverable for death sustained in an airplane accident occurring in Brazil should be applied by the District of Columbia. Our Court of Appeals stated:

> "Our conclusion that the District Court properly applied the Brazilian limitation rests upon an examination of the respective relationships of Brazil and the District of Columbia with the accident, and with the parties here involved; and a consideration of their respective interests in the resolution of this issue.[14]

The Court of Appeals in *Tramontana* gave tacit approval to the approach taken by the most recent formulation of the Restatement (Second), Conflict of Laws. It stated at page 346 of 121 U.S.App.D.C.; at page 476 of 350 F.2d:

> "Our decision is consistent as well with the most recent formulation of the Restatement (Second), Conflict of Laws. Section 379 sets forth the general rule in tort cases as follows:
>
> (1) The local law of the state which has the most significant relationship

---

cise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services and other care. 161 N.W.2d at 638.
See also Schenk v. Schenk, 100 Ill.App. 2d 199, 241 N.E.2d 12 (1968), where the Appellate Court of Illinois, Fourth District, refused to abolish the intrafamily immunity doctrine in toto, but held that under the facts of the case, where the tortious conduct had no direct family relationship, i. e., no direct connection with the family relationship, the complaint of a father against his unemancipated daughter for injuries incurred by the father when struck by an automobile driven by the daughter stated a cause of action.

10. 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969).

11. *Cf.*, Williams v. Rawlings Truck Line, Inc., 123 U.S.App.D.C. 121, 357 F.2d 581 (1965).

12. 124 U.S.App.D.C. 89, 90, 361 F.2d 543, 544 (1966).

13. 121 U.S.App.D.C. 338, 350 F.2d 468 (1965) cert. denied sub non. Tramontana v. Varig Airlines, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966).

14. 121 U.S.App.D.C. at 341, 350 F.2d at 471.

with the occurrence and with the parties determines their rights and liabilities in tort.

(2) Important contacts that the forum will consider in determining the state of most significant relationship include:

(a) the place where the injury occurred,

(b) the place where the conduct occurred,

(c) the domicile, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

(3). In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states."

■ What then are the respective relationships of the competing jurisdictions with the accident and with the parties here involved? Militating for application of the law of the District of Columbia is this jurisdiction's status as situs of the injury and the conduct leading thereto. Militating for application of the law of Tennessee is that jurisdiction's status as domicile of the minor plaintiffs Sharon and Marilyn Emmert and their father, Carl H. Emmert, the third party defendant. It must be remembered that this jurisdiction's approach is now issue oriented, i. e., the factors militating for application of the law of a jurisdiction will vary in weight depending upon the particular issue in focus. The precise question involved here—choice of law as to intrafamily immunity has been expressly dealt with by the Restatement (Second) Conflict of Laws (Tentative

Draft No. 9, 1964.) Section 390g provides:

"In accordance with the rule of § 379, whether one member of a family is immune from tort liability to another member of the family is determined by the local law of the state of their domicil."[15]

We are not unmindful of Comment c to § 390g which provides to the effect that the rule of § 390g should be inapplicable when the action is not between members of the same family, e. g., in a contribution context as here. But this Court is of the opinion that rejection of the rationale for Comment c is required by the reasoning of our Court of Appeals in Yellow Cab Co. of D. C. v. Dreslin, 86 U.S.App. D.C. 327, 181 F.2d 626 (1950). This was a case in which a defendant in a suit brought by a wife, crossclaimed against the husband for contribution. The cross-claimant was met by a claim of interspousal immunity. After following the rule that a defendant may enforce a claim for contribution only where the injured party plaintiff in the suit would have had a cause of action against the party from whom contribution is sought, the Court of Appeals affirmed the dismissal of the crossclaim and gave the following rationale for its holding:[16]

"The argument that it would be inequitable to allow Mrs. Dreslin to be 'enriched' at the sole expense of the Cab Co., permitting her husband, equally at fault, to escape any of the burden, overlooks the fact that preservation of domestic peace and felicity is the policy upon which the rule of immunity between husband and wife is based."

■ It is obvious from the above language that this jurisdiction does not distinguish between direct actions and actions for contribution in evaluating the interests involved. The focus remains at all times on the relationship between the

15. Numerous recent cases have reached this conclusion by one means of analysis or another including Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254

(1968). See also Roscoe v. Roscoe, 126 U.S.App.D.C. 317, 379 F.2d 94 (1967).

16. 86 U.S.App.D.C. at 328, 181 F.2d at 627.

party plaintiff and the party from whom contribution is sought.[17]

Accordingly it is concluded that should a conflict exist as to the issue of intrafamily immunity, this Court would apply the law of domicile of the minor plaintiffs and third party defendant—Tennessee. Under Tennessee law the doctrine of intrafamily immunity would bar the minor plaintiffs from proceeding directly against their father.[18]

Upon consideration of all of the foregoing it is the determination of this Court that the defendant United States may not recover on its claim for contribution and that the third party complaint must be dismissed.

---

17. Other courts have also failed to draw the distinction urged by Comment c to § 390g of the Restatement (Second) Conflict of Laws (Tentative Draft No. 9, 1964). See Haynie v. Hanson, 16 Wis.2d 299, 114 N.W.2d 443 (1962) and Pirc v. Kortebein, 186 F.Supp. 621 (E.D.Wis. 1960).

18. The Court does not feel impelled to deal at any length with the Renvoi problem. While it is true that some Tennessee case law exists to the effect that *lex loci delicti* applies to immunity questions in automobile cases, (see Lucas v. Phillips, 205 Tenn. 444, 326 S.W.2d 905 (1957); Glover v. Glover, 44 Tenn.App. 712, 319 S.W.2d 238 (1958); Franklin v. Wills, 217 F.2d 899 (6th Cir. 1954)) a recent case, Goldberg v. Faull, 275 F.Supp. 96 (E.D.Tenn.1967), has discredited the precedential value of those cases and indicated the existence of strong arguments for application by Tennessee courts of *lex loci domicilii* with respect to immunity. In this context, it should also be noted that the Restatement (Second) Conflict of Laws expressly avoids the Renvoi problem by calling for the application of the *local* law of the jurisdiction having the most significant relationship with the occurrence and the parties. See Restatement (Second) Conflict of Laws (Tentative Draft No. 9) 1964 § 379.