JILL ELAINE PETERSEN, a minor, by LOUISE PETERSEN, as her next friend; WAYNE A. PETERSEN and LOUISE PETERSEN *v.* CITY AND COUNTY OF HONOLULU, a municipal corporation.

No. 4886.

DECEMBER 30, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiff, a two-year-old child, by her parent, Louise Petersen, as next friend, sued the City and County of

Honolulu, alleging that as a proximate result of the City's negligence in maintaining, operating and controlling its facilities at Hanauma Bay Beach Park, plaintiff was burned by hot ashes adjacent to a barbecue pit. Louise Petersen and Wayne Petersen, the child's parents, joined as co-plaintiffs to recover medical expenses incurred as a result of the necessary treatment of the child's injuries. The City answered and counterclaimed against the parents for contribution pursuant to the Uniform Contribution Among Joint Tortfeasors Act as adopted in Hawaii, HRS §§ 663-11 to 663-17, alleging that the parents' negligence in supervision of their child was the sole or a contributing cause of the child's injuries. As a preliminary matter, we note that the Act provides for apportionment of the common liability of joint tortfeasors as among themselves, but it does not affect the joint and several liability of each defendant toward the plaintiff.[1] The court below struck the answer and dismissed the counterclaim, but granted leave to defendant to appeal that ruling to this court, to determine whether the parents may be regarded as "joint tortfeasors" within the meaning of HRS § 663-11.[2]

---

[1] The Commissioner's Note to Sec. 2(4) of the Uniform Act (HRS § 663-12) states:

... [the section] would permit apportionment of pro rata shares of liability of the joint tortfeasors as among themselves. It would not affect their joint and several liability toward the injured person. . . . The draftsmen of the Act feel that there is a very strong case to be made for apportioning the common liability as among the tortfeasors when the evidence clearly indicates that one or more of the tortfeasors was much more at fault than one or more of the others. At the same time they wish to point out that each tortfeasor is still completely and fully liable toward the injured person. *Uniform Contribution Among Joint Tortfeasors Act*, 9 U.L.A. 233, 236. See also *Tino* v. *Stout*, 49 N.J. 289, 298, 229 A.2d 793, 798 (1967).

[2] HRS § 663-11 states:

For the purpose of this part the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

As we pointed out in *Tamashiro* v. *De Gama,* 51 Haw. 74, 75, 450 P.2d 998 (1969), whether contribution may be had from a person depends upon whether the original plaintiff could have enforced liability against him, had he chosen to do so. The question thus becomes, can a minor child enforce liability against his parents in an action for negligence in Hawaii? This case is the converse of that presented in *Tamashiro, supra,* in which this Court held that a minor child may be joined as a joint tortfeasor in a suit brought against a third party by his parents. We limited our holding in *Tamashiro* to suits by parents against their children; but we see no reason to reach a different result where the child sues the parent. We therefore hold that the child can enforce liability against his parents, and that the counterclaim against the parents should have been allowed.

In oral argument, counsel for appellees urged that our holding in *Tamashiro* was based upon the existence of insurance coverage in that case. While some emphasis was placed upon that circumstance, as a factor to be considered in the analysis of the policy issue involved—family harmony—we did not expressly base our holding in *Tamashiro* upon the existence of insurance; and in light of our analysis of the same policy issue in this case, we now hold that parent-child negligence suits will be allowed in Hawaii regardless of the presence or absence of insurance coverage. This holding is not, therefore, inconsistent with our holding in *Tamashiro;* it is, rather, the final step in the process that we started in that case, of deciding that the parent-child immunity doctrine, extant in some other jurisdictions, will not be adopted by this Court.

We note at the outset that at common law there was no rule of immunity between parents and children for their torts; *Dunlap* v. *Dunlap,* 84 N.H. 352, 354, 150 A.

905, 906 (1930), Prosser, *Law of Torts* 886 (3d ed. 1964), and that suits involving their property rights have uniformly been allowed. *Lamb* v. *Lamb,* 146 N.Y. 317, 41 N.E. 26 (1895), *King* v. *Sells,* 193 Wash. 294, 75 P.2d 130 (1938), *Small* v. *Morrison,* 185 N.C. 577, 118 S.E. 12 (1923), *Signs* v. *Signs,* 156 Ohio St. 566, 103 N.E. 2d 743 (1952), *Goller* v. *White,* 20 Wis. 2d 402, 410, 122 N.W. 2d 193, 196 (1963).

The immunity doctrine originated in the United States in the case of *Hewlett* v. *George,* 68 Miss. 703, 9 So. 885 (1891). That case was based entirely upon the court's view of public policy. 68 Miss. at 703, 9 So. at 887. The court reasoned that suits between parents and their children would be disruptive of the harmony and tranquillity of the family relationship. We will not attempt an exhaustive review of that case and the ones following it, which are numerous. For a full and well-reasoned analysis of those authorities, see *Dunlap* v. *Dunlap, supra,* and Comment, *Child* v. *Parent: Erosion of the Immunity Rule,* 19 Hastings L.J. 201 (1967). It is sufficient here to note that the *Hewlett* line of authorities is based upon premises which we feel are too insubstantial to support denial of redress of wrongs where such redress existed at common law.

We start from the proposition that, in general, minor children are entitled to the same redress for wrongs done them as are any other persons. *Dunlap* v. *Dunlap,* 84 N.H. 352, 354, 150 A. 905, 906 (1930), *Wick* v. *Wick,* 192 Wis. 260, 263-64, 212 N.W. 787, 788 (1927) (dissent), Prosser, *Law of Torts* 885 (3d ed. 1964). In order to justify prohibition of enforcement of this right, a very substantial showing must be made that such prohibition will help to achieve an important adverse policy. We feel that no such showing can be made here. As we noted in *Tamashiro,* 51 Haw. 74, 78, 450 P.2d 998, 1001 (1969),

488

we think that when a wrong has been committed, the harm to the family relationship has already occurred; and to prohibit reparations can hardly aid in restoring harmony.

That serious injustice can result from that prohibition is seen not only from cases that deny recovery for intentional and even malicious torts, as in *Hewlett* v. *George,* 68 Miss. 703, 9 So. 885 (1891), (wrongful and malicious imprisonment in asylum), *Roller* v. *Roller,* 37 Wash. 242, 79 P. 788 (1905) (rape of daughter), and *McKelvey* v. *McKelvey,* 111 Tenn. 388, 77 S.W. 664 (1903) (cruel and inhuman punishment), but also from the recent case of *Barlow* v. *Iblings,* —— Iowa ——, 156 N.W. 2d 105 (1968). There, a six-year-old child who lost his hand in an electric meat cutter in the kitchen of his father's cafe, allegedly as a result of his father's negligence, was prohibited from suing his father because, the court said, to allow the suit would disrupt the harmony and tranquillity of the family relationship. In our view, such results are unconscionable.

Reversed and remanded for further proceedings consistent with this opinion.

*Wilfred K. Iwai,* Deputy Corporation Counsel *(Paul Devens,* Corporation Counsel, with him on the briefs), for defendant-appellant.

*Myer C. Symonds (Bouslog & Symonds* of counsel) for plaintiffs-appellees.

---

### DISSENTING OPINION OF ABE, J.

It appears that the majority of the court has decided that because in *Tamashiro* v. *De Gama,* 51 Haw. 74, 450 P.2d 998 (1969), we permitted a father to sue his unemancipated, minor son, here, a minor child should be permitted to sue his parents.

I believe in *Tamashiro* we did not affirmatively decline

to adopt the parent-child immunity doctrine, and at page 79 we said:

"The public policy rationale for the parent-child immunity is further weakened by the fact that at common law, suits were allowed between parent and child especially with respect to contract and property rights. Prosser, *Law of Torts,* 885 (3d ed. 1964). Some of these suits are deeply antagonistic. We doubt a tort action in which recovery from an insurer is highly probable, would more seriously jeopardize the family relationship or discipline.

"We therefore hold that this jurisdiction will not adopt the doctrine which prohibits suits by parents against their children. This holding, we caution, is limited to this adversary relationship because other intrafamily adversary situations may involve problems or considerations different from the one at hand."

The City cites *Hebel* v. *Hebel,* 435 P.2d 8 (Alaska 1967), where the court permitted a suit by a minor against her mother for personal injuries suffered as a result of the mother's negligent driving of an automobile and asks this court to follow it as authority to allow this suit against the parents. It is to be noted that the Alaska court at page 15 said:

"At this time we believe it unnecessary to attempt to define precisely what scope should be given to the doctrine of parental immunity. Rather, we limit our decision to the factual situation before us, and hold that the unemancipated minor has a right of action against her mother for personal injuries allegedly sustained as a result of the parent's negligent driving.

\*     \*     \*     \*     \*

"We are of the further view that although the existence of liability insurance does not create liability

its presence is of considerable significance here. To persist in adherence to family-harmony and parental-discipline-and-control arguments when there is automobile liability insurance involved is in our view unrealistic. If there is insurance there is small possibility that parental discipline will be undermined, or that the peace of the family will be shattered by allowance of the action."

In the other cases[1] cited by the City, where an unemancipated, minor child was allowed to sue his parents, insurance policies were involved so that the real parties in interest, parties responsible for the damages, were insurance companies.

It should be pointed out in *Tamashiro,* we were very careful to hold that the rule of the case was not intended to apply to all cases involving "intrafamily adversary relationship" because, I believe, we recognized that public policy rationale of intrafamily immunity has a role in our society and jurisdiction.

Even in this era of technical and scientific achievement, I do not believe that we humans have become so impersonal that we may be considered mechanical or automated beings. In my opinion, even today, a human being is a creature of emotions. By this, I mean that one's life is greatly influenced by one's emotion; more than it should be, probably, but that is the fact of life. A human being is neither a robot nor an electronic computer—he is a living organism composed of flesh and blood whose behavior is greatly influenced by emotion.

In my opinion as long as warm blood runs in our veins, one's behavior cannot be controlled at all times by reason or logic, and emotional stress will have a great influence

---

[1] Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966) ; Badigian v. Badigian, 9 N.Y.2d 472, 174 N.E.2d 718 (1961) ; Dennis v. Walker, 284 F. Supp. 413 (U.S.D.C., D.C. 1968).

on one's conduct. Thus, to permit a minor to sue her parents in this action, I believe, would unnecessarily tax the emotions of the parties and may bring about intrafamily discord and jeopardize parent-child relationship and therefore the doctrine of intrafamily immunity should be invoked here.

I believe that this court appreciates the fact that an insurance company is the real party defendant in many cases, though a suit is brought against an insured named as defendant because judgment against him is satisfied by an insurance company. Also, I believe, that this court realizes, that though the mention of insurance in the presence of jurors may be regarded as sufficient ground for a mistrial, the majority, if not all, of the jurors is cognizant of insurance coverage in cases being tried by them.

In my opinion, this court should legally give recognition to this factual situation and permit insurance companies to be named as actual parties because they are the real parties in interest. H.R.C.P. Rule 17(a). If this practice is permitted, this court would not be faced with the problems posed by this action and it will help to simplify the issue of "intrafamily adversary relationship." Also, it may avoid the issue whether an attorney representing an insured, but retained by an insurance company, may not be violating § 35 of the Canons of Professional Ethics.

I would affirm.