884 F.2d 492
 Raymon VELAZQUEZ, et al., Plaintiff,
v.
NATIONAL PRESTO INDUSTRIES, a foreign corporation, Defendant-Appellant,
v.
DAY & ZIMMERMAN, INC., Defendant-Appellee.
Raymon VELAZQUEZ, et al., Plaintiff,
v.
NATIONAL PRESTO INDUSTRIES, a foreign corporation, Defendant-Appellee,
v.
DAY & ZIMMERMAN, INC., Defendant-Appellant.
 Nos. 88-2696, 88-2697.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1989.
Decided Sept. 6, 1989.
 
 Jeffrey H.K. Sia, Gail M. Kang, Libkuman, Ventura, Ayabe, Chong & Nishimoto, Honolulu, Hawaii, for National Presto Industries, defendant-appellant-cross-appellee.
 Paula Devens, Paul Devens, Ikazaki, Devens, Lo, Youth & Nakano, Honolulu, Hawaii, Norman C. Russell, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Tex., for Day & Zimmerman, Inc., defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the District of Hawaii.
 Before GOODWIN, Chief Judge, HUG, and TANG, Circuit Judges.
 HUG, Circuit Judge:
 
 I.
 
 1
 These cross-appeals involve an award of contribution between two defendants to a personal injury damage action. We must review the relevant factual findings by the district court and apply to the facts Hawaii's Uniform Contribution Among Tortfeasors Act (the "UCATA"), Haw.Rev.Stat. Secs. 663-11 to -17 (1985 & Supp.1988). The district court had jurisdiction over this case under 28 U.S.C. Sec. 1332 (1982) (diversity). Our jurisdiction rests on 28 U.S.C. Sec. 1291 (1982). Although we conclude the factual findings are free of clear error and affirm the district court's decision to award contribution, we disagree with the court's application of the UCATA. We therefore remand the case for an increase in the contribution award.
 
 II.
 
 2
 This controversy began when a 105-millimeter round of Howitzer ammunition manufactured by National Presto Industries ("NPI") and loaded, assembled, and packed by Day & Zimmerman, Incorporated ("D & Z") prematurely detonated on July 15, 1980 during a military training exercise on the Island of Hawaii. The explosion killed one soldier and injured others. Three of the injured soldiers filed parallel products liability lawsuits in federal district court and in Hawaii Circuit Court against D & Z, NPI, and other defendants. D & Z and NPI each filed cross-claims for contribution from the other defendants in both actions. All defendants but D & Z and NPI were eventually dismissed from these actions, and the state court action was removed and consolidated with the action in federal district court.
 
 
 3
 Before trial, D & Z, NPI, and the plaintiffs entered into settlement negotiations. On November 24, 1987 and on January 20, 1988, the district court supervised settlement conferences among these parties. The product of these conferences, as found by the district court, frames much of the dispute now before us.
 
 
 4
 At the conference on November 24, 1987, plaintiffs offered to settle all of their claims for $225,000. Counsel for D & Z indicated a desire to limit the amount plaintiffs might recover to $225,000 and stated he would seek the approval necessary for D & Z to contribute $150,000 to the settlement, reserving D & Z's right to pursue contribution from NPI as a joint tortfeasor. Counsel for NPI also expressed a desire to limit plaintiffs' recovery to $225,000, but stated he lacked authority to pay more than $50,000 for the settlement. Counsel for NPI agreed, at the district court's insistence, to seek authorization to pay $75,000 toward the settlement. Counsel for both D & Z and NPI consistently maintained that their respective clients had no fault in causing the accident. According to the district court, NPI, D & Z, and the plaintiffs reached a consensus by the end of the conference that the case would be settled for $225,000. Velazquez v. National Presto Indus., 682 F.Supp. 1499, 1500 (D.Haw.1988).
 
 
 5
 On November 30, 1987, NPI notified D & Z that NPI would contribute no more than $50,000 to the settlement. At a second settlement conference before the district court on January 20, 1988, NPI restated this position. Counsel for D & Z stated D & Z would pay $150,000 toward the settlement if NPI would pay the remaining $75,000, or, in the alternative, D & Z would advance the full $225,000, secure a joint tortfeasor release, and seek full contribution from NPI.
 
 
 6
 The district court conducted a hearing on February 16, 1988 to determine the terms of the "settlement understanding" that emerged from the two settlement conferences that the court had supervised. The court heard argument from counsel, elicited sworn testimony from its own law clerk, and considered affidavits of counsel who were present at the conference--including counsel for plaintiffs. Based on these evidentiary sources and the court's own recollection of the conferences, the court made three findings:
 
 
 7
 (1) Solely for purposes of settlement, D & Z and NPI intended to admit common liability to place a cap on the amount the plaintiffs could possibly recover.
 
 
 8
 (2) D & Z and NPI intended the $225,000 settlement amount agreed to by the plaintiffs to discharge their common liability as joint tortfeasors as the term is used in Haw.Rev.Stat. Secs. 663-11 through 663-17.
 
 
 9
 (3) D & Z and NPI intended jointly to settle with the plaintiffs and thereafter determine their relative degrees of possible fault at a contribution trial; the degree of fault for either defendant could range from 0% to 100%.
 
 
 10
 Velazquez, 682 F.Supp. at 1502-03 (emphasis in original).
 
 
 11
 Following the hearing, D & Z paid plaintiffs $225,000 and secured a release of plaintiffs' claims against both D & Z and NPI. The case then proceeded to trial on D & Z's claim against NPI for contribution. The court submitted the case to the jury with instructions that D & Z and NPI were joint tortfeasors and that the assignment of relative degrees of fault between the two was the only issue requiring resolution. By special verdict, the jury expressly found that neither D & Z nor NPI bore any fault in causing the premature explosion.
 
 
 12
 In ruling on post-trial motions by both parties, the district court held that the jury's finding of no fault as to D & Z precluded D & Z from recovering contribution as a joint tortfeasor under the UCATA. The court held further, however, that D & Z was entitled to $50,000 from NPI under the doctrine of equitable subrogation. NPI now appeals the subrogation award on the ground that the doctrine cannot apply to this case. D & Z cross-appeals, contending the district court either erred as a matter of law in refusing to award D & Z contribution under the UCATA or abused its discretion by failing to award subrogation equal to 50 percent of the total settlement. Because we hold that D & Z is entitled to contribution under the UCATA for one-half of the amount of the settlement with plaintiffs, we do not address the issues regarding equitable subrogation.III.
 
 
 13
 Under the UCATA, the right to contribution exists among "joint tortfeasors," who are defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Haw.Rev.Stat. Sec. 663-11 (1985). A party is liable within the meaning of section 663-11 if the injured person could have recovered damages in a direct action against that party, had the injured person chosen to pursue such an action. See Petersen v. City and County of Honolulu, 51 Haw. 484, 462 P.2d 1007, 1008 (1969), as amended, (1970); Tamashiro v. De Gama, 51 Haw. 74, 450 P.2d 998, 1000 n. 3 (1969) (discussing predecessor to section 663-11). A party who qualifies as a joint tortfeasor becomes entitled to a money judgment of contribution against the other joint tortfeasors only by discharging the common liability to the injured person or by paying more than a pro rata share of the liability. Haw.Rev.Stat. Sec. 663-12. As a result, a joint tortfeasor who settles with the injured person must secure for other joint tortfeasors a release of liability before seeking a contribution judgment against them. See id. Once the right to contribution has been established, the common liability is distributed equally among all the joint tortfeasors and the contribution award apportioned on that basis unless the relative degrees of fault among the tortfeasors is so disproportionate that equal distribution is inequitable. Id. In the latter case, the amount of contribution required of each tortfeasor is adjusted to reflect their relative degrees of fault. Id.
 
 
 14
 D & Z argues that all prerequisites for a money judgment of contribution under the UCATA have been met in this case. According to D & Z, the settlement among plaintiffs, NPI, and D & Z established a joint liability between D & Z and NPI to the same group of injured persons, making D & Z and NPI joint tortfeasors under section 663-11. D & Z further argues that its payment of the entire settlement amount and procurement of a release in favor of NPI established D & Z's right to a money judgment of contribution. That judgment, D & Z submits, should divide the common liability equally and award contribution for half of the settlement amount because the jury determined that D & Z and NPI had equal fault in causing the explosion.
 
 
 15
 NPI's response is twofold. First, NPI disputes the district court's finding that both D & Z and NPI settled with plaintiffs without settling between themselves. Second, in an argument patterned on the district court's opinion, NPI contends that the jury's finding of no fault in either NPI or D & Z established the absence of any joint liability to the same group of injured persons within the meaning of section 663-11. For the reasons discussed below, we conclude that D & Z has correctly outlined the appropriate application of the UCATA to the present case.
 
 A.
 
 16
 We first review for clear error the factual findings that pertain to the settlement reached by the parties. See LaDuke v. Nelson, 762 F.2d 1318, 1321 (9th Cir.1985), modified on other grounds, 796 F.2d 309 (9th Cir.1986). NPI insists that it never settled with anyone because D & Z's failure to accept NPI's offered contribution of $50,000 at the conclusion of the second settlement conference effected a rejection of any settlement offer concerning NPI's liability to the plaintiffs. Our review of the record convinces us that the decision of the district court was well supported by the record and does not leave us with a definite and firm conviction that the district court was wrong in its assessment of the parties' intentions. See Yeseta v. Baima, 837 F.2d 380, 386 (9th Cir.1988) (describing the clearly erroneous standard).
 
 
 17
 Negotiations during the settlement conferences transpired under the district court's supervision. Throughout the conferences, NPI expressed a desire to limit plaintiffs' recovery to $225,000. The allocation of ultimate responsibility for that amount between D & Z and NPI was the only point of enduring dispute. The first conference ended with an understanding that counsel for NPI would seek authority to contribute $75,000 to the settlement and that the case would be settled for $225,000. The second conference ended with NPI still offering to pay $50,000 toward the settlement.
 
 
 18
 In assessing whether these events yielded a settlement between NPI and the plaintiffs, the district court relied upon its own recollection of the conferences, testimony by the court's law clerk who was present at the conferences, and affidavits by counsel for all the parties. The district court, the law clerk, counsel for plaintiffs, and counsel for D & Z all indicated that both D & Z and NPI intended to settle with plaintiffs without allocating responsibility for payment of the $225,000 amount between themselves. Although NPI is correct that D & Z's payment of the entire $225,000 amount would have conformed to a settlement arrangement reached solely between D & Z and plaintiffs, the payment is equally consistent with the arrangement found by the district court for plaintiffs could have collected the entire $225,000 amount from either D & Z or NPI. Because we have found no clear error, we must reject NPI's challenge to the finding that both D & Z and NPI settled with plaintiffs.
 
 B.
 
 19
 We next subject the district court's interpretation of the UCATA to the same de novo review that we apply to questions of federal law. See Matter of McLinn, 739 F.2d 1395, 1398 (9th Cir.1984) (en banc). As did the district court, NPI contends that Alamida v. Wilson, 53 Haw. 398, 495 P.2d 585 (1972), compels the conclusion that the jury's finding of no fault as to both D & Z and NPI established the absence of joint liability essential to the right of contribution under the UCATA. In Alamida, all but one of several alleged joint tortfeasors settled with the plaintiff. Id., 495 P.2d at 587. These settling defendants secured for themselves and for the non-settling defendant a release of liability to the plaintiff. Id. The settling defendants then sought contribution from the non-settling defendant through an action under the UCATA. Id. At trial, the jury found two of the settling defendants free of fault, the non-settling defendant 30 percent at fault, and the other settling defendants 70 percent at fault.[1] The non-settling defendant appealed the portion of the contribution award in favor of the innocent non-settling defendants, and the Hawaii Supreme Court reversed. The court concluded that the two innocent settling defendants were not joint tortfeasors with a right to contribution under the UCATA because the no-fault finding established their lack of joint liability to the plaintiff. See id., 495 P.2d at 589.
 
 
 20
 NPI argues that the status of D & Z and NPI is indistinguishable from the status of the innocent settling defendants in Alamida. We disagree. Although the no-fault finding precluded the innocent settling defendants from qualifying as joint tortfeasors in Alamida, the settlement by NPI, D & Z, and the plaintiffs blunts the impact of the no-fault finding in the present case. In Alamida, the non-settling defendant was not a party to the agreement that established the liability of the innocent settling defendants to the plaintiff. As a result, the innocent settling defendants had to prove their status as joint tortfeasors as part of their contribution claim. Here, in contrast, both NPI and D & Z settled with the plaintiffs. This settlement established as between NPI and D & Z their joint liability to the same group of plaintiffs. Such joint liability in turn established both parties' status as joint tortfeasors within the meaning of Haw.Rev.Stat. Sec. 663-11. Indeed, the terms of the settlement understanding outlined by the district court indicate that NPI and D & Z specifically intended such a result. Velazquez, 682 F.Supp. at 1502-03 (D & Z and NPI intended to admit and "to discharge their common liability as joint tortfeasors as the term is used in Haw.Rev.Stat. Secs. 663-11 through 663-17." (emphasis in original)). Alamida simply does not control the application of the UCATA in the present fact situation.
 
 
 21
 With the establishment of joint tortfeasor status for D & Z and NPI, the sole purpose for the jury's assessment of the parties' relative fault was to determine whether contribution would be in equal shares or adjusted to reflect disproportionate fault levels. See Haw.Rev.Stat. Sec. 663-12 (1985). The district court's instructions to the jury reflect this limited scope of inquiry. In light of the settlement as described by the district court, we conclude that the status of the D & Z and NPI as joint tortfeasors was not subject to the jury's determination of relative fault levels.
 
 IV.
 
 22
 The settlement as found by the district court established the status of D & Z and NPI as joint tortfeasors under Haw.Rev.Stat. Sec. 663-11. D & Z has met all other requirements for an award of contribution under the UCATA. Because the relative degrees of fault of D & Z and NPI were not disproportionate, section 663-12 directs that the common liability be distributed equally between them. We therefore affirm the district court's decision that D & Z is entitled to contribution from NPI but remand for an increase in the amount of the award to $112,500, or one-half of the settlement amount.
 
 
 23
 AFFIRMED in part and REMANDED.
 
 
 
 [1]
 The Hawaii Supreme Court's recitation of the facts in Alamida states that the jury found the nonsettling defendant 30 percent at fault, without mentioning the allocation of fault to the other defendants. 495 P.2d at 587. However, the jury interrogatories, filed in the trial court, show that the jury exonerated two of the settling defendants and allocated 70 percent of the fault to the other settling defendants. Interrogatory, Civil No. 27908 (Dec. 23, 1970). That the Hawaii Supreme Court knew of and relied on the exoneration of the two settling defendants is apparent in the opinions discussion regarding the applicability of the UCATA. See Alamida, 495 P.2d at 589 & n. 6 (reference to gratuitous payments by non-negligent co-defendants); see also Velazquez, 682 F.Supp. at 1503