**Thomas H. FELDERHOFF, Jr., Petitioner,**

v.

**August FELDERHOFF et al., Respondents.**

No. B–2969.

Supreme Court of Texas.

Dec. 8, 1971.

Stark & Barnhart, Gainesville, Woodruff, Kendall & Smith, David M. Kendall, Jr., Dallas, for petitioner.

Brown, Day & Crowley, George A. Crowley, Fort Worth, for respondents.

DANIEL, Justice.

This is a personal injury suit filed on behalf of Thomas H. Felderhoff, Jr. for damages arising out of injuries sustained while employed by Felderhoff Brothers, a farming partnership of which his father was a member. At the time of the accident Felderhoff, Jr. was a fourteen-year-old unemancipated minor, and the accident was alleged to have been proximately caused by the negligent acts of his father in the course and furtherance of the partnership business.

Felderhoff, Jr., hereinafter referred to as plaintiff, did not sue his father, naming only Felderhoff Brothers and the other two partners as defendants. The trial court granted summary judgment for the defendants on the grounds that a parent is immune from a suit by his unemancipated child for personal injuries based upon ordinary negligence and that such immunity extends to the partnership of which his father is a member. The Court of Civil Appeals affirmed. 470 S.W.2d 301. We reverse and remand for a trial on the merits.

Felderhoff Brothers, a partnership comprised of August Felderhoff, Norbert Felderhoff and Thomas H. Felderhoff, Sr., has been engaged in a substantial farming operation since 1946. At the time of the accident in question, it was farming and ranching approximately 5000 acres, with wheat, oats, barley and hay as the principal crops. In the name of the partnership, a bank account was maintained; farming equipment was purchased and held; employees, including the plaintiff, were compensated; social security taxes were paid; and income tax returns were filed. In the reply filed herein by counsel for defendants it is stipulated that the partnership carried liability insurance which covered its employees. As an employee of the partnership, plaintiff was paid $1.25 an hour to operate farm machinery and perform other assigned duties. The partnership made deductions from plaintiff's salary for withholding and social security taxes the same as from the salaries of other employees. In all respects, plaintiff enjoyed the same status as other employees of the partnership. The only difference urged by defendants as a bar to plaintiff's cause of action is that he was the unemancipated minor son of one of the partners, and under his supervision at the time of the accident. For the purposes of this opinion, we assume that the father would be jointly and severally liable with his co-partners for any debts or obligations of the partnership resulting from a judgment in this case. Secs. 13 and 15, Texas Uniform Partnership Act, Article 6132b, Vernon's Ann.Tex.St.

On August 24, 1967, after plaintiff and his father had completed combining a field of milo, they moved the large Massey-Ferguson combine to a place for winter storage and were in the process of cleaning up the machine. The engine was left running, but the attached grain auger operated from the cab of the machine was disengaged and motionless when plaintiff began scraping out the excess grain and chaf with his right hand. While plaintiff's hand was down in the bin which housed the auger, it is alleged that his father lost his footing in the cab and struck the lever which threw the auger in gear, thus trapping and holding plaintiff's right arm in the auger for more than two hours. He alleged that bones in his arm were broken and muscles, nerves, ligaments and blood vessels within the arm were cut, torn and mutilated, resulting in severe pain, anguish and permanent damage to his arm. Various acts of ordinary negligence on the part of the father, while acting for the partnership, were alleged as proximate causes of the injuries.

The Court of Civil Appeals, with some indication of reluctance, followed the general rule stated in Aboussie v. Aboussie, 270 S.W.2d 636 (Tex.Civ.App., 1954, error refused) that an unemancipated minor child may not sue his parent for damages based on ordinary negligence and that this immunity applies also to an action against his parent's co-partners. The general rule of parental immunity has been previously stated and applied, directly or indirectly, in four reported Texas cases, but none of these involved a situation where the child's injury and the parent's alleged negligence arose from an employer-employee or master and servant relationship.[1] Thus, this is a

1. Garza v. Garza, 209 S.W.2d 1012 (Tex. Civ.App., 1948, no writ hist.), a suit by minor children against their father and his second wife for alienation of his affections and loss of his financial support, etc.; Aboussie v. Aboussie, supra,

case of first impression in this Court on the question of whether parental immunity should be extended to acts arising outside of the normal family relationship of parent and child and occurring in the parent's business activity in which the child is engaged as an employee. Once a child has become an employee in the business vocation of his parent or his parent's business partnership, is he to be denied the rights to reparation for negligently inflicted bodily injuries vouchsafed to all of the other employees simply because of the parental relationship? We think not. The general rule of parental immunity, and the reasons therefor, are not applicable to the facts and circumstances presented by the pleadings and summary judgment proof in this case, because they are referable to a business and vocational relationship rather than to filial or parental duties or family responsibilities.

In arriving at this decision, the origin, reasons and purposes of the parental immunity rule, and its many exceptions, have been carefully considered. At the outset it should be noted that suits between children and parents for protection of their property rights, even for negligent damage to their property, have long been permitted, and Prosser says "there is no good reason to believe that the English law would not permit actions for personal torts as well, subject always to the parent's privilege to enforce reasonable discipline * * *" Prosser, Law of Torts, 865 (4th ed. 1971). It was not until 1891 that American courts be-

gan to prohibit suits against parents by minor children for injuries to their persons or bodies. In that year the Supreme Court of Mississippi held that a minor daughter could not recover damages from her mother for wrongful and malicious imprisonment in a hospital for the insane.[2] Without citation of authority, the court based its decision on what it deemed to be a necessary public policy, reasoning as follows:

> "[S]o long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent." 9 So. 887.

■ At the turn of the century, the rule was followed by the Supreme Court of Tennessee in denying a child damages for cruel and inhuman punishment inflicted by a stepmother with the father's consent[3] and by the Supreme Court of Washington in denying a daughter damages from her father after he had raped her.[4] These primitive applications of the rule to wilful and intentional parental torts have since been abandoned. The prevailing rule today is that in the commission of wilful, malicious

in which a 2½ year old child stuck her hand in an electric fan which had been negligently placed on the floor of a store operated by a partnership of which the father was a member; City of Houston v. Watson, 376 S.W.2d 23 (Tex.Civ.App., 1964, err. ref., n. r. e.) in which a summary judgment for a father was rendered on City's cross-action against him for indemnity based on his negligence in connection with a minor child driving a motor scooter over a hole in a street; and Wallace v. Wallace, 466 S.W.2d 416 (Tex.Civ.App.1971, writ granted but subsequently dismissed by request and agreement of the parties), in which the rule is stated as the basis for a holding that a minor child was immune from a per-

sonal injury suit filed by his father on account of the child negligently backing a car over him. See also Littleton v. Jordan, 428 S.W.2d 472 (Tex.Civ.App.1963, err. ref.), in which the general rule is stated but not applied in favor of a third party employer when his employee negligently ran over the employee's own minor son in the course of the father's employment.

2. Hewlett v. George, 68 Miss. 703, 9 So. 885 (1891).

3. McKelvey v. McKelvey, 111 Tenn. 388, 77 S.W. 664 (1903).

4. Roller v. Roller, 37 Wash. 242, 79 P. 788 (1905).

and intentional wrongs against the child the parent has abandoned or abdicated his parental responsibilities and subjected himself to liability. Aboussie v. Aboussie, supra, 270 S.W.2d at 639; Cowgill v. Boock, 189 Or. 282, 218 P.2d 445 (1950).[5] It may be safely said that the general rule is now restricted to ordinary negligence and unintentional wrongs, and this is only one of several restrictions, exceptions and limitations which have been adopted in more recent decisions. The highest courts in many states have reexamined the rule and declined to apply it in cases where the reasons for the rule no longer exist. The Supreme Courts of California, New Hampshire and New York have entirely abrogated the rule.[6] The Supreme Courts of Minnesota and Wisconsin abolished it in all instances of negligence except where the alleged act involves (1) an exercise of parental authority over the child, or (2) an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care; and Kentucky follows substantially the same limitation of the rule.[7] The Supreme Courts of Alaska, Arizona, New Jersey and Virginia, hold that the parental immunity rule does not apply to personal injury suits arising out of automobile accidents.[8] Many other states have adopted one or more of the exceptions limiting the application of the rule, and the trend is to restrict the rule to activities which are clearly referable to the discharge of parental duties.[9]

The wide prevalence of liability insurance, and the protection which it affords parent, child and family, are noted in many of the foregoing cases. Although all recognize that the existence of insurance will not create a cause of action if none otherwise exists, many of the courts comment that insurance is so common today that it should not be ignored in testing the current validity of reasons for the parental immunity rule, especially with respect to negligent acts of parents growing out of automobile accidents and business activities in which the nominal defendant parent usually will suffer no loss.[10] Plaintiff offers this argu-

5. For other cases, including reckless and drunk driving, see Child v. Parent: Erosion of the Immunity Rule, 19 Hastings L.J. 201, 206–207 (1967); and Intrafamily Litigation-Parent and Child, No. 542 Insurance Law Journal 133, 137–139 (March, 1968).

6. Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966); Gelbman v. Gelbman, 23 N.Y. 2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969). See also Petersen v. City of Honolulu, 462 P.2d 1007 (Hawaii Sup. Ct., 1970).

7. Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968); Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963); Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. Sup.Ct.1971).

8. Hebel v. Hebel, 435 P.2d 8 (Alaska Sup. Ct.1967); Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970); France v. A.P.A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970); Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971).

9. In 1968, B. David Hinkle, vice-president of Crawford Insurance Adjusters, Atlanta, Georgia, reviewed the exceptions which have been adopted in various states and concluded: "We presume that more and more jurisdictions will employ all of the exceptions to the immunities which we have discussed. This will be done until such time as there will be very little remaining of the parental immunities which began in Mississippi in 1891." No. 542 Insurance Law Journal 133, 146 (March, 1968). For other discussions and collections of authorities, see: McCurdy, Torts Between Persons in Domestic Relation, 43 Harvard L.R. 1030 (1930); 19 Hastings L.R. 201, fn. 5 supra; 8 Houston L.R. 183 (1970); Tort Actions Between Members of the Family, 26 Missouri, L.R. 152 (1961); 44 Notre Dame Law 1001 (1969); Parent-child Immunity: The Case for Abolition, 6 San Diego L.R. 286 (1969); and 22 Southwestern L.J. 675 (1968).

10. See articles listed in preceding footnote for compilation of cases and complete discussion of the effect of liability insurance on the parental immunity rule. Also see Prosser, Law of Torts, 868 (4th ed. 1971).

ment as a reason why the parental immunity rule should be completely abrogated. On the other hand, defendants contend, and some courts have held, that the presence of liability insurance and the possibility which it affords for fraud and collusion between parent and child is a reason for adhering to the rule of parental immunity in ordinary negligence suits.[11]

Our holding against parental immunity in this particular case is not based on the prevalence or the presence of liability insurance. Neither do we consider the prevalence or presence of insurance as a compelling reason to deter this action. The possibility of fraud and collusion is present in all liability insurance cases and is good reason for added caution on the part of the courts in examining the facts presented in each case, but it is no reason for denial of a cause of action in all cases where a close relationship exists between the insured and the injured party. Defendants' pleading and summary judgment proof contain no allegation or hint either of collusion on the one hand, or of rupture of family peace on the other hand, between father and child because of this lawsuit. We believe that our laws and judicial system are adequate to ferret out and prevent collusion if and when proper allegations and proof are presented in a particular case without the necessity of adopting an absolute immunity rule which would apply to this and all other cases in which no collusion is alleged.

Perhaps the strongest and soundest trend away from parental immunity concerns torts arising from the parent's business activity as distinguished from the discharge of his parental duties. In Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905 (1930), it was held in a fact situation similar to this case that a sixteen-year-old son employed by his father in the construction business could maintain suit against him for injuries sustained in the collapse of a staging while working under circumstances showing an employer's liability for injury to his employee. In Lusk v. Lusk, 113 W. Va. 17, 166 S.E. 538 (1932), a sixteen-year-old daughter's suit was permitted against her father for injuries sustained while riding in a school bus owned and operated by him. A similar situation was presented in Worrell v. Worrell, 174 Va. 11, 4 S.E.2d 343 (1939), a minor daughter being allowed to recover damages from her father for injuries sustained while riding a commercial bus owned and operated by him, the court holding that the action was against him in his vocational capacity for injuries occasioned in the performance of his business, and not in the parental relation. In Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149 (1952), a five-year-old son was permitted to maintain suit against his father and his father's common carrier partnership for permanent injuries caused by his father negligently running a truck over the boy while he played in a street. In Signs v. Signs, 156 Ohio St. 566, 103 N.E.2d 743 (1952), a seven-year-old son was held to have a cause of action against his father's business partnership for burns sustained from a leaking gasoline pump, the court holding that the child "should have as clear a right to maintain an action in tort against his parent in the latter's business or vocational capacity as such child would have to maintain an action in relation to his property rights." Trevarton v. Trevarton, 151 Colo. 418, 378 P.2d 640 (1963), upheld an unemancipated minor son's suit against his father, a timber logger, for injuries sustained when he dragged a tree over the son, the court holding that the father "was engaged in his business or employment and that his alleged negligent

11. Villaret v. Villaret, 83 U.S.App.D.C. 311, 169 F.2d 677 (1948); Dennis v. Walker, 284 F.Supp. 413 (D.D.C.1968); Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147 (1960). Contra: Hebel v. Hebel, 435 P.2d 8 (Alaska Sup.Ct., 1967);

Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966); Signs v. Signs, 156 Ohio St. 566, 103 N.E.2d 743 (1952); Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149 (1952).

acts had nothing to do with the discharge of parental duties."

We agree with the effect given in the foregoing decisions to the difference between acts of parents in the course of business activities as distinguished from those which arise from the discharge of normal parental duties and responsibilities. In the present case, the legal relationship of employer and employee was created between the defendant partnership and plaintiff under which the same legal duties were owed to plaintiff as to any other employee. These duties and their concomitant liabilities are not nullified by reason of the fact that the father was a member of the partnership and that he is alleged to have committed the negligent acts which resulted in the injuries complained of. As heretofore stated, such acts were alleged to have been committed in the course of the business of the partnership rather than in the discharge of parental authority or duties.

■ Plaintiff urges that the general rule of parental immunity is out of date and should be completely abrogated by this Court. This is neither required nor appropriate in the present case. We believe a better course was followed by the Supreme Courts of Kentucky, Minnesota and Wisconsin in retaining the immunity rule with respect to alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child.[12] We trust that it is not out of date for the state and its courts to be concerned with the welfare of the family as the most vital unit in our society. We recognize that peace, tranquility and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts. The most we can do is to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children. These parental duties, which usually include the provision of a home, food, schooling, family chores, medical care, and recreation, could be seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and responsibilities. It is in this sphere of family relations between parent and child that the rule of immunity from litigation continues to find justification and validity.

■ Because the negligence complained of in this case is alleged to have occurred in the conduct of business activities wholly outside of the sphere of parental duties and responsibilities, we hold that the trial court erred in granting summary judgment for the defendants. In so far as it is in conflict with this opinion, we overrule the decision in Aboussie v. Aboussie, supra, which understandably was followed by both the trial court and the Court of Civil Appeals in this case. We recognize that the general rule stated in *Aboussie* could have been relied on by tortfeasors and insurers as a reason for omitting investigative procedures or retaining files in many old cases not yet barred by the statutes of limitation because of the long-continued minority of an injured child. Article 5535 V.A.T.S.; Rigdon v. Rigdon, supra. Therefore, the holding herein shall be applicable only in the present case and similar cases in which the injury complained of occurred on or after August 24, 1967, the date of the accident in this case.

We do not reach and therefore do not pass upon plaintiff's additional point with

12. See cases cited in footnote 7, supra.

reference to the effect of emancipation by removal of his legal disabilities after the date of his injury.

The judgments of the courts below are reversed and the case is remanded to the district court for trial on the merits.