Smith W. ROUSEY, Next Friend of Cheryl T. Rousey, a Minor, Appellant,

v.

Doris S. ROUSEY, Appellee.

No. 84–669.

District of Columbia Court of Appeals.

Argued Dec. 18, 1984.

Decided Oct. 31, 1985.

Aaron M. Levine, Washington, D.C., with whom Richard S. Schrager, Washington, D.C., was on the brief, for appellant.

Frank J. Martell, Washington, D.C., for appellee.

Before NEWMAN, FERREN, and TERRY, Associate Judges.

TERRY, Associate Judge:

The only issue presented in this case is whether this court should adopt the parental immunity doctrine as the law of the District of Columbia and hold that appellant is barred from maintaining this suit against appellee, his wife, on behalf of their unemancipated minor child. We conclude that the doctrine is out of date and decline to adopt it, and therefore we reverse the trial court's order granting summary judgment to appellee.

Appellee, Doris Rousey, and her daughter, Cheryl Rousey, were involved in an automobile accident in the District of Columbia. Cheryl sustained injuries, and through her father, Smith Rousey, she brought suit against her mother, asserting that the accident and her injuries were a direct and proximate result of her mother's negligence. Mrs. Rousey, who was insured by Government Employees Insurance Company and represented by its counsel, filed a motion for summary judgment on the ground that parental immunity barred appellant from suing his wife on behalf of their unemancipated daughter. The court granted the motion, and appellant noted this appeal.

The origins of the parental immunity doctrine can be traced back to 1891, when the Supreme Court of Mississippi refused to permit a suit brought by a child against her mother. In ordering the suit dismissed, the court said:

> [S]o long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.

*Hewellette v. George*, 68 Miss. 703, 711, 9 So. 885, 887 (1891). Although the court cited no authority for this proposition, courts in all but eight other states followed Mississippi's lead and adopted some form of parental immunity. *See* Hollister, *Parent-Child Immunity: Doctrine in Search of Justification*, 50 FORDHAM L.REV. 489, 494 (1981–1982). Various reasons have been advanced in support of the doctrine, but the reason most frequently cited by the courts, and the most persuasive, has been that parental immunity—like interspousal immunity[1]—preserved domestic tranquility and family unity. *Id.* at 502; *see, e.g., Downs v. Poulin*, 216 A.2d 29, 30 (Me. 1966), *overruled, Black v. Solmitz*, 409 A.2d 634, 639 (Me.1979); *Luster v. Luster*, 299 Mass. 480, 481, 13 N.E.2d 438, 439 (1938), *overruled, Sorensen v. Sorensen*, 369 Mass. 350, 352, 339 N.E.2d 907, 909

---

**1.** Interspousal immunity was abolished in the District of Columbia by statute in 1976. *See* D.C.Code § 30–201 (1981).

(1975); *Wick v. Wick,* 192 Wis. 260, 262, 212 N.W. 787 (1927).

The courts of the District of Columbia did not address the issue until 1948, in a case in which a thirteen-year-old boy brought suit against his mother for injuries he suffered in an automobile accident. The accident occurred in Maryland, however, and hence the only issue before the court was whether the boy had a right to bring suit under Maryland law. After stating that the issue had not been decided in the District of Columbia and that it was neither "necessary nor proper for [it] to analyze the authorities, weigh the problem and announce a rule," the court concluded that decisions of the Maryland Court of Appeals "on kindred questions clearly indicate its accord with the overwhelmingly prevalent rule that public policy forbids such suits." *Villaret v. Villaret,* 83 U.S.App.D.C. 311, 312, 169 F.2d 677, 678 (1948).

Twenty years later a case came before Judge Holtzoff of the United States District Court for the District of Columbia in which a minor child had brought suit against her parents for injuries sustained in an automobile accident. Like the court in *Villaret,* Judge Holtzoff noted that the issue of parental immunity "has never been authoritatively determined in this jurisdiction." *Dennis v. Walker,* 284 F.Supp. 413, 415 (D.D.C.1968). The judge then examined at length the case law from many jurisdictions and decided to adopt the parental immunity doctrine, concluding that the "overwhelming weight of authority" favored such immunity because it served "to protect parental discipline, domestic felicity, and family tranquility and concord."

*Id.* at 417. Judge Holtzoff acknowledged that personal injury actions, particularly those stemming from automobile accidents, were often defended by insurance companies, but held that this fact supported the principle of parental immunity:

> The presence of liability insurance ... may lead to fraud, or at least collusive, or at best friendly suits. A parent may encourage his minor child to bring such an action against him. This is not a far-fetched possibility. Not only is it contrary to good faith, but it also has the tendency of promoting cynicism and lack of integrity on the part of the child. The law should not encourage such activities. The parent in such a situation may be at times tempted to bring such a suit, because the judgment, if any, would have to be paid by the insurance company. He is likely to put himself into a position of conflict of interest, for he probably would not lend that cooperation to the insurance company which his policy requires.

*Id.; accord, Villaret v. Villaret, supra,* 83 U.S.App.D.C. at 313, 169 F.2d at 679.

Although the "overwhelming weight of authority" did at one time favor parental immunity, a substantial number of state courts have abandoned the doctrine in whole or in part. To date, eight states have abrogated it entirely;[2] seven have abrogated it except in cases in which the parent's alleged negligent act involves an exercise of parental authority over the child, or an exercise of ordinary parental discretion with respect to such matters as food, care, and education;[3] six have abrogated it in automobile negligence cases;[4]

---

**2.** *Gibson v. Gibson,* 3 Cal.3d 914, 479 P.2d 648, 92 Cal.Rptr. 288 (1971); *Anderson v. Stream,* 295 N.W.2d 595 (Minn.1980); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1969); *Kirchner v. Crystal,* 15 Ohio St.3d 326, 474 N.E.2d 275 (1984); *Winn v. Gilroy,* 296 Or. 718, 681 P.2d 776 (1984); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971).

**3.** *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970); *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981); *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky. App.1970); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972); *Foldi v. Jeffries,* 93 N.J. 533, 461 A.2d 1145 (1983); *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971); *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963).

**4.** *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980); *Black v. Solmitz,* 409 A.2d 634 (Me.1979); *Silva v. Silva,* 446 A.2d 1013 (R.I.

and four have abrogated it in automobile negligence cases in which the parents have liability insurance.[5]

The trend toward abrogation is attributable, in large part, to the prevalence of liability insurance. *See, e.g., Williams v. Williams,* 369 A.2d 669, 672 (Del.1976); *Ard v. Ard,* 414 So.2d 1066, 1067–1068 (Fla. 1982); *Sorensen v. Sorensen,* 369 Mass. 350, 362, 339 N.E.2d 907, 914 (1975). The reason for this is obvious: liability insurance relieves the parents of direct financial responsibility for injuries sustained by their children, and thus substantially reduces the possibility that a suit to recover damages will disrupt domestic tranquility or family unity. As the Supreme Judicial Court of Massachusetts wrote in *Sorensen:*

> When insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets. Far from being a potential source of disharmony, the action is more likely to preserve the family unit in pursuit of a common goal—the easing of family financial difficulties stemming from the child's injuries.

*Id.* at 362, 339 N.E.2d at 914 (footnotes and citations omitted); *accord, e.g., Streenz v. Streenz,* 106 Ariz. 86, 88, 471 P.2d 282, 284 (1970); *Nocktonick v. Nocktonick,* 227 Kan. 758, 766–770, 611 P.2d 135, 141–142 (1980); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 438, 245 N.E.2d 192, 193–194, 297 N.Y. S.2d 529, 531–532 (1969); *Goller v. White,* 20 Wis.2d 402, 412, 122 N.W.2d 193, 197 (1963).

Although there is a possibility that parent and child might conspire to defraud the insurance carrier or that the parent might fail to cooperate with the carrier as required under the insurance contract, *see, e.g., Dennis v. Walker, supra,* 284 F.Supp. at 417, that possibility exists to a certain extent in every case and hardly justifies a "blanket denial of recovery for all minors." *Sorensen, supra,* 369 Mass. at 364, 339 N.E.2d at 915; *accord, e.g., France v. A.P.A. Transport Corp.,* 56 N.J. 500, 505, 267 A.2d 490, 493 (1970); *Falco v. Pados,* 444 Pa. 372, 379–383, 282 A.2d 351, 355–356 (1971).

> We constantly depend on efficient investigations and on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. As part of the fact-finding process, these triers of fact must "distinguish the frivolous from the substantial and the fraudulent from the meritorious." ... Experience has shown that the courts are quite adequate for the task.

*Sorensen v. Sorensen, supra,* 369 Mass. at 363–364, 339 N.E.2d at 914–915 (citations and footnote omitted).

▇▇▇▇ We find the court's opinion in *Sorensen* persuasive and conclude that the parental immunity doctrine would serve no valid purpose in an automobile negligence case such as this one, in which the parent against whom suit is brought has liability insurance. Therefore, in the absence of any controlling case law either way,[6] we reject appellee's argument that an unemancipated minor child should be barred, in the interest of family unity, from suing his or her parent for negligence. The fact that the parent's insurance carrier is the real party in interest dispels any notion that family unity will be disrupted by allowing the child to sue the parent.[7] Accordingly,

---

1982); *Smith v. Kauffman,* 212 Va. 181, 183 S.E.2d 190 (1971); *Merrick v. Sutterlin,* 93 Wash.2d 411, 610 P.2d 891 (1980) (en banc); *Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976).

**5.** *Williams v. Williams,* 369 A.2d 669 (Del.1976); *Ard v. Ard,* 414 So.2d 1066 (Fla.1982); *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *Unah v. Martin,* 676 P.2d 1366 (Okla. 1984).

**6.** The decision in *Villaret v. Villaret, supra,* was based on Maryland law, and *Dennis v. Walker, supra,* is not binding on this court. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

**7.** We do not decide whether the parental immunity doctrine may be invoked in other types of cases which do not involve a parent-defendant covered by liability insurance. Since that issue

we reverse the order granting appellee's motion for summary judgment and remand this case for trial.

*Reversed and remanded.*

is not before us, we leave its resolution for another day.

Likewise, we do not consider any questions which may arise under the Compulsory/No-Fault Motor Vehicle Insurance Act of 1982, D.C. Code §§ 35–2101 through 35–2113 (1985 Supp.), since neither party has briefed or argued any issues relating to that Act. We think it best to wait until such issues are properly briefed and argued on a fully developed record (which we do not have in this case) before we embark on those uncharted waters.