**Shara Lyn SNEED, A Minor, by Next Friend, Jewel McCULLOUGH, Appellants,**

v.

**Gerald W. SNEED, Deceased, Appellee.**

**No. 04–82–00353–CV.**

Court of Appeals of Texas, San Antonio.

Feb. 5, 1986.

Rehearing Denied March 7, 1986.

Stewart J. Alexander, San Antonio, for appellants.

Winstol D. Carter, Houston, Peter A. White, Fulbright & Jaworski, Washington, D.C., for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

This is a suit by plaintiff, Shara Lyn Sneed, a minor, to recover damages from the estate of her deceased father, Gerald W. Sneed, for the wrongful death of her mother and brother and for bodily injury suffered by plaintiff, as the result of the crash of an airplane piloted by her father. Plaintiff was the only member of the family who survived the crash and is the only surviving child of her deceased parents. This appeal is from an order granting the motion of defendant for summary judgment.

The motion for summary judgment was based on the doctrines of interspousal immunity and parental immunity. Because the trial court granted summary judgment on the pleadings in favor of defendant, we must accept as true plaintiff's allegations that the crash of the airplane was proximately caused by the negligence of her father.

If the doctrine of interspousal immunity would bar recovery by plaintiff's mother had she survived the crash, it is clear that plaintiff may not recover in this case for the wrongful death of her mother. *Bounds v. Caudle*, 560 S.W.2d 925, 926 (Tex.1977). Similarly, if plaintiff's brother, had he survived, would be unable to recover because of the doctrine of parental immunity, plaintiff cannot recover for his death. If the doctrine of parental immunity is applicable in this case, it is also clear that plaintiff may not recover for the injuries she suffered in the crash. Plaintiff urges that we discard the two immunity doctrines or, in the alternative, that we hold they are not applicable in this case.

### Interspousal Immunity

At common law, neither spouse could sue the other for tort, whether the tort was one affecting property primarily, affecting the person primarily, or affecting both property and the person. As pointed out in *Bounds v. Caudle, supra,* this rule was the necessary result of the legal fiction that husband and wife were one person. 560 S.W.2d at 926. This "one person" was the husband, since the legal existence of the wife was suspended during coverture and "incorporated and consolidated into that of the husband." 1 BLACKSTONE COMMENTARIES 411 (W. Lewis ed. 1898). Allowing the wife to sue the husband was unthinkable, since that would suppose the separate existence of the wife. The same inexorable logic led to the conclusion that the husband could not sue the wife because this would present the patently ridiculous situation of the husband suing himself.[1]

The enactment, particularly in the latter half of the 19th century, of statutes often referred to as Married Women's Acts or Emancipation Acts which recognized that married women possessed a separate legal personalty and identity from that of her husband, destroyed the "unity" fiction upon which the interspousal immunity doctrine was based. But the courts refused to apply the maxim that when the reason for a rule of law ceases, the rule of law ceases. No longer free to pretend that husband and wife are one person, the courts salvaged the doctrine, insofar as suits for bodily injury are concerned, by resorting to considerations of public policy. The result was that, while the new legislation forced recognition of the right of a married woman to recover from her husband if he broke the leg of her mule, the courts continued to clothe him with immunity if he tortiously broke his wife's leg.

When the Texas Supreme Court adopted the doctrine of interspousal immunity in *Nickerson & Masterson v. Nickerson,* 65 Tex. 281 (1886), it rejected the fictive unity of husband and wife as the basis for the immunity and justified the immunity on grounds of public policy. The two policy considerations most frequently advanced as justifications for the immunity rule are that it promotes marital harmony and prevents collusive claims. Neither argument is persuasive.

It has never been satisfactorily explained how permitting the wife to recover for her husband's conduct which tortiously injures her property would not disrupt domestic harmony, while allowing her to recover for bodily injury would kindle a flame "on the domestic hearth" which would "consume in an instant the conjugal bond, and bring on a new era indeed—an era of universal discord, of unchastity, of bastardy, of dissoluteness, of violence, cruelty, and murders."[2] If a suit between spouses over property and contractual rights does not destroy domestic peace and tranquility, why would a suit for bodily injury lead to discord, unchastity, etc., or even result in a loss of love and respect? If mutual love and respect continues to exist after the injury, no suit will be filed. When the point is reached where the injured spouse seeks legal redress against the other, there has been a substantial diminution of love, respect and harmony, and it is doubtful that a denial of relief to the injured spouse will, in some mysterious way, restore the vanished domestic tranquility which existed prior to the injury.

In *Bounds v. Caudle, supra,* the Texas Supreme Court, in declaring the immunity doctrine inapplicable in cases involving intentional torts, recognized that domestic peace and harmony "which has already been strained to the point where an inten-

---

1. This unity of husband and wife was not accepted in the criminal law. In criminal cases, the judges managed to see that husband and wife were, indeed, separate individuals. W. PROSSER, THE LAW OF TORTS 859 (4th ed. 1971).

2. *Ritter v. Ritter,* 31 Pa. 396 (1858) quoted in W. PROSSER & W.P. KEETON, THE LAW OF TORTS 902, n. 14 (5th ed. 1984).

tional physical attack could take place will not be further impaired by allowing a suit to be brought to recover damages for the attack." 560 S.W.2d at 927. Similarly, when domestic tranquility has been strained to the point that a negligent injury creates such resentment in the injured spouse that legal redress is sought for the injury, the vanished harmony will not be restored by denying the victim compensation. The denial of relief will but increase the resentment.

Where liability insurance is involved, some courts are quick to raise the spectre of collusive claims against the insurer. One court was convinced that no wife would want to sue her husband for a negligent tort except as a "raid on an insurance company." *Newton v. Weber*, 119 Misc. Rep. 240, 196 N.Y.S. 113 (1922). This reason is inconsistent with the view that allowing suit would destroy the peace and harmony of the home, since the "domestic tranquility" argument presupposes a genuine claim for damages. It is difficult to understand how a collusive suit in which the spouses cooperate in an attempt to "raid" an insurance company will create resentment in any party other than the insurance company.

The "collusion" argument is frequently and often advanced in cases where there is no evidence of the existence of insurance. This argument is simply based on a mistrust of our judicial system. The possibility of fraud and collusion is present in all liability insurance cases. But, as pointed out in *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 932 (Tex.1971), this cannot justify the denial of relief in all cases where there is a close relationship between the insured and the injured party. "We believe that our laws and judicial system are adequate to ferret out and prevent collusion if and when proper allegations and proof are presented, without the necessity of adopting an absolute immunity rule which would

apply to this and all other cases in which no collusion is alleged." *Id.*[3]

It might be suggested that the immunity rule should be preserved because of the intimate sharing of contact and mutual concessions within the marital relationship, so that conduct which may be tortious between unmarried persons is not tortious between spouses. Of course, absent tortious conduct, there is no need for an immunity doctrine. Abolition of the immunity doctrine does not limit in any way the defense of consent which carries a much broader application between husband and wife than it does between other parties. The intimacy of the marital relationship may also involve some relocation in application of the concept of reasonable care. *See* RESTATEMENT (SECOND) OF TORTS § 895F, comment h (1977).

In *Bounds v. Caudle, supra*, our Supreme Court, while noting that the spousal immunity doctrine had been either abolished or limited in a majority of states, did not abrogate the doctrine but merely limited its application to allow recovery for intentional torts. The fact that the *Bounds* holding is limited to intentional torts is not surprising, since the facts involved an intentional assault on the wife by the husband. But the significant portion of the opinion is the reasoning which led the Supreme Court to refuse to apply the doctrine in that case.

As already pointed out, the *Bounds* conclusion is based on the fact that in the case of an intentional assault by one spouse on the other the marital harmony has been impaired to such extent that compensating the injured spouse would result in no further impairment. The Court took the realistic view that in such cases there is no domestic harmony to be protected.

The basic rationale for the *Bounds* opinion is that where the facts are such that a realistic view of the situation reveals that there is no marriage, except in name, left

3. Our Supreme Court has refused "to indulge in the assumption that close relatives will prevaricate so as to promote a spurious lawsuit."

*Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985).

to protect, a rule which can be justified only on the ground that it protects the marital relationship will not be applied. To deny recovery for the purpose of preserving a relationship which no longer exists is nonsense.

■ In the case before us, if the wife had survived the crash which killed her husband, there would have been no obstacle to awarding her compensation for her injuries. The death of the husband in the same disaster terminated the marriage relationship, and it cannot seriously be asserted that her claim against her husband's estate should be denied in order to preserve marital harmony and tranquility. Since the husband was killed, there is no possibility of collusion between the widow and the decedent for the purpose of raiding an insurance company.

Even if the considerations of social policy on which the immunity doctrine rests were not so patently specious, there is no reason for applying the doctrine of interspousal immunity in this case, since none of the purposes supposedly furthered by application of the doctrine can be achieved. The sole reason for denying the wife recovery against her husband's estate would be to deny recovery.

The doctrine of interspousal immunity does not bar plaintiff's recovery in this case. The summary judgment in favor of defendant was erroneous unless plaintiff is barred by the doctrine of parental immunity.

### Parental Immunity

The concept of legal identity or unity, which furnished the basis for the rule of interspousal immunity, is not applicable to the relationship of parent and child. There are no difficulties of legal identity or of procedure which operate to bar a civil action in tort by a child against his parent. Apparently, the courts had no difficulty in allowing a minor child to sue his parent in contract or for injury to the child's property. McCurdy, *Torts Between Persons in Domestic Relation*, 43 HARV.L.REV. 1030, 1057–58 (1930).

The question of the parent's liability to the child for bodily injury suffered by the child as the result of the parent's conduct was not presented to a court, English or American, prior to 1891, when the Mississippi court, without citation of authority, held that a minor child could not maintain an action against the parent for false imprisonment. *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891). The court reasoned that a sound public policy, designed to subserve the repose of families and the best interests of society, precluded a suit by a minor child to seek redress for personal injuries suffered at the hands of the parent.

The American courts adopted the *Hewellette* doctrine almost unquestioningly. In the process, the courts managed to discover a variety of reasons for denying redress to the injured minor, many of them the same, and as unconvincing, as the reasons given for interspousal immunity. McCurdy, *Torts Between Parent and Child*, 5 VILL.L.REV. 521, 528–29 (1960).

The Texas Supreme Court discussed the parental immunity rule at some length in *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 929–33 (Tex.1971). In the course of holding that the immunity was not applicable where the tort arises from the business activities of the parent, as distinguished from the discharge of his parental duties, the Court noted that the prevailing view today is that parental immunity is restricted to cases involving ordinary negligence and unintentional wrongs. The Court recognized that other exceptions and restrictions have been adopted in recent years and called attention to decisions entirely abrogating the rule.

In *Felderhoff*, our Supreme Court declined the invitation to abolish the rule of parental immunity, choosing to retain it only as to "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to

provisions for the care and necessities of the child." 473 S.W.2d at 933. In its opinion, the Court based the grant of the limited immunity on the desirability of preserving domestic tranquility and parental discipline. The Court rejected the argument that the immunity was necessary in order to prevent collusion between parent and child for the purpose of recovering from the liability insurance carrier, if any. 473 S.W.2d at 932.

The rule that the immunity is not applicable where the tortious conduct was a part of the parent's business activity and wholly outside the sphere of the father's parental duties and responsibilities was reaffirmed in *Farley v. MM Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975).

■ Although it appears that the parental immunity rule is still the law in Texas in cases involving negligent conduct by the parent, the rule is not applicable to the facts of this case. Even in jurisdictions where the rule is given its primitive application so that it insulates the parent against liability even for willful and intentional torts, it is limited to cases in which the child is seeking to recover for personal bodily injuries. *Felderhoff v. Felderhoff*, 473 S.W.2d at 930. The rule has never been applied to prevent suits by minors against their parents for negligent damage to the child's property. *Id.* An action under the wrongful death statute is not a suit seeking redress for bodily injury inflicted on the child by the parent. Such an action is beyond the ambit of the immunity rule.

In *Bounds v. Caudle*, once the Court had determined that the doctrine of interspousal immunity would not have prevented recovery by the wife had she survived the bodily injury intentionally inflicted by the husband, it had no difficulty in allowing the wrongful death action by the surviving children of the murdered spouse. The doctrine of parental immunity was not even mentioned.

In this case the father's conduct which resulted in the death of plaintiff's mother and brother is not referable to his parental responsibilities to plaintiff. In *Felderhoff*, the Court was concerned with the prevention of the use of the judicial system to disrupt the "wide sphere of reasonable discretion which is necessary in order for parents to provide nurture, care and discipline for their children." 473 S.W.2d at 933. The Supreme Court's concern with the result of holding parents liable for ordinary negligence in the discharge of their parental duties is irrelevant when the conduct of the parent which is involved has no connection with the discharge of parental duties.

Even if we are prepared to accept, without question, the theory that an uncompensated tort makes for domestic tranquility and filial respect for the negligent parent, in this case there is no possibility that recovery will disrupt a family relationship which is nonexistent and which terminated at the time that plaintiff's action under the wrongful death statute accrued. There is no basis for the contention that plaintiff's suit against her father's estate would run counter to some public policy, real or imagined, "for the simple reason that there is no home at all in which discipline and tranquility are to be preserved." *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951).

It has been suggested that the immunity rule is necessary in order to prevent a depletion of the funds of the parent or the parent's estate to the detriment of other children. This imagined reason can have no application to the case before us, since plaintiff is the only surviving child. This reason for the rule is indefensible, since it prevents only the children of the tortfeasor from obtaining compensation for their injuries. This rationale is never applied for the purpose of protecting the wrongdoer's children against claims of strangers injured by the wrongdoer's negligent conduct. It is hard to understand why a child may not be compensated for an injury by his parent while a stranger will be allowed to deplete the "family exchequer" to the detriment of the tortfeasor's children.

Defendant points out that allowing a suit by the minor plaintiff would have undesir-

able consequences, since the minor plaintiff could wait until he attained his majority and then file suit, thus creating uncertainty concerning the liabilities of the estate. This argument is nothing more than a criticism of the rule that limitations will not run against a minor. The same result would follow if the tortfeasor's conduct had resulted in the death of his sister, or of a person unrelated to him, and the beneficiary under the wrongful death statute was a minor. There can be no excuse for denying recovery to a child of the tortfeasor in a situation where the problem of delay would not result in denial of a cause of action to a complete stranger. There is no valid reason why the possibility of delay of several years in filing of suit should prevent recovery only where the potential plaintiff is a child of the wrongdoer.

We conclude that none of the causes of action asserted by plaintiff are barred by the doctrine of interspousal immunity or the doctrine of parental immunity. We do not intend to abolish either the doctrine of spousal immunity or the doctrine of parental immunity, but merely hold that, under the specific facts of this case, neither doctrine is applicable.

The judgment of the trial court is reversed insofar as it dismissed appellant's claim for damages for her physical injury and for the death of her mother. That portion of appellant's claim is severed from her claim arising from the death of her brother and is remanded to the trial court for reinstatement on the trial court's docket for further proceedings not inconsistent with this opinion. The portion of the trial court's judgment dismissing appellant's claim based on her brother's death is affirmed, since, under our wrongful death statute appellant is not authorized to recover for her brother's death.