Wagas JILANI, Ammad Jilani, and Saher Jilani, By and Through Their Next Friend, Khawar JILANI, Appellants,

v.

Ahmad F. JILANI, Appellee.

No. 07–87–0114–CV.

Court of Appeals of Texas, Amarillo.

March 16, 1988.

Rehearing Denied April 6, 1988.

3. Formerly Tex.Rev.Stat.Ann. art. 2226.

Patrick C. Simek, P.C., P.C. Simek, Lubbock, for appellants.

Purdom Law Offices, Thomas J. Purdom, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

In this suit, appellants Wagas Jilani, Ammad Jilani and Saher Jilani, acting by and through their next friend, Khawar Jilani, seek to recover damages for personal injuries from their father, appellee Ahmad F. Jilani. Those injuries were allegedly caused by the negligent operation by Ahmad F. Jilani of an automobile in which the plaintiffs were passengers. The question presented is whether such a suit by an unemancipated minor is prohibited by the Parental Immunity Doctrine. From a summary judgment in favor of appellee, appellants bring this appeal. We affirm the judgment of the trial court.

Deposition testimony shows that this suit arises from a one-car accident in which appellants, as noted above, were passengers in a car driven by appellee, their father. The accident occurred while the parties were on a family vacation. By deposition, appellee testified that he lost control of the car when it slid on gravel on the side of the road. The car subsequently hit a high line pole and rolled upside-down.

The doctrine of parental immunity is judge-made law, generally considered not to have existed in this country prior to 1891. In that year, the Supreme Court of Mississippi, in *Hewelette v. George*, 68 Miss. 703, 9 So. 885 (1891), held that a minor daughter could not recover damages from her mother for wrongful imprisonment in a hospital for the mentally ill. Without citation of prior authority, the *Hewelette* Court reasoned that:

[S]o long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.

9 So. at 887. Most American courts followed Mississippi's lead and adopted some form of parental immunity. Various reasons were advanced in support of the doctrine, but the one most frequently cited by the courts, and the most persuasive, was that parental immunity preserved domestic tranquility and family unity. *See Aboussie v. Aboussie*, 270 S.W.2d 636, 639 (Tex.Civ. App.—Fort Worth 1954, writ ref'd).

In *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 929–33 (Tex.1971), the Supreme Court had occasion to consider the parental immunity doctrine at some length. That case involved a personal injury suit filed on behalf of a minor for damages arising out of injuries sustained by him while employed by a farming partnership of which his father was a member. In the course of its discussion, the Court noted with approval the developing trend in exempting from parental immunity torts arising from the parent's business activity, as distinguished from the discharge of a parent's parental duties. In its holding, the Court declined an invitation to abolish the immunity doctrine in its entirety. However, it significantly limited the application of that doctrine in Texas to instances pertaining to "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Id.* at 933. The continuation of the doctrine in those respects, the Court reasoned, was

necessary to prevent judicial disruption of "the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care and discipline for their children." *Id.* The Court explicated those parental duties as those usually pertaining to "the provision of a home, food, schooling, family chores, medical care and recreation." *Id.*

Parenthetically, we note that even prior to the *Felderhoff* decision, in *Littleton v. Jordan*, 428 S.W.2d 472, 475 (Tex.Civ.App. —Texarkana 1968, writ ref'd), the Court held that the parental immunity rule did not bar recovery by the estate of a deceased unemancipated child from the employer of the deceased child's father, where the father's negligence proximately caused the death of the child, even though the father (employee) was himself immune from suit.

In *Farley v. M M Cattle Company*, 529 S.W.2d 751, 758 (Tex.1975), citing the *Felderhoff* decision, the Supreme Court allowed an unemancipated minor's action against his employer, a ranch owner. The action was for injuries sustained when a horse ridden by the minor collided with another horse ridden by a co-worker, while the two were rounding up cattle. The owner contended that the rule of parental immunity protected the minor's father, the ranch foreman, from suit and, likewise, protected the owner from derivative liability. In discussing that contention, the Court noted that the action of the father in directing the minor to ride the horse and in failing to supervise him in his activities was acting in the conduct of the owner's business and wholly outside the sphere of his parental duties and responsibilities. That being the case, the Court relied upon the *Felderhoff* decision and held the action was not barred by the parental immunity doctrine. *Id.*

In the recent case of *Sneed v. Sneed*, 705 S.W.2d 392, 396–97 (Tex.App.—San Antonio 1986, writ ref'd n. r. e.) the Court of Appeals had occasion to examine the status of the parental immunity rule in Texas. In *Sneed*, an unemancipated minor sought to recover damages from the estate of her deceased father for the wrongful death of her mother and brother and for bodily injury suffered by the minor as a result of the crash of an airplane piloted by her father. In the course of its discussion, the Court reviewed in some detail the present state of the parental immunity rule as explicated and limited in the *Felderhoff* and *M M Cattle Company* cases. It characterized the present status of parental immunity as being limited to acts of ordinary negligence which involve a reasonable exercise of parental authority or discretion with respect to provisions for the care and necessities of the child. It noted that the doctrine was not applicable where the tortious conduct was a part of the parent's business activity and wholly outside the sphere of the parent's parental duties and responsibilities. 705 S.W.2d at 396–97.

In allowing the minor's suit, the *Sneed* Court initially noted that parental immunity has never applied to prevent a suit by a minor for negligent damage to the minor's property. The Court suggested that the portion of the action under the wrongful death statute was not a suit seeking redress for bodily injury inflicted on the child by the parent and was beyond the ambit of the immunity rule. *Id.* at 397. The Court went on to emphasize that the father's conduct resulting in the occurrence was not referable to his parental responsibilities. It scrutinized the *Felderhoff* explication of the basis for the rule as being designed to prevent disruption of the "wide sphere of reasonable discretion which is necessary in order for parents to provide nurture, care and discipline for their children." *Id.* at 397 (citing *Felderhoff v. Felderhoff*, 473 S.W.2d at 933). Since, the Court said, in the *Sneed* case, there was no possibility that a recovery by the appellant would disrupt a familial relationship which terminated at the time the appellant's action accrued, no public policy existed which should prevent recovery by that minor plaintiff. *Id.*

In pursuance of that reasoning, the Court reversed the trial court's judgment dismissing appellant's suit insofar as it covered her claims for personal injury and for

her mother's death. *Id.* at 398. Since her action for her brother's death was not permissible under the wrongful death statute, the portion of the trial court judgment dismissing that action was affirmed. Significantly, in reaching its decision, the Court recognized the continuation of the parental immunity rule as limited by the *Felderhoff* Court, but under the specific facts in its case, held that rule was not applicable. *Id.*

Summarized, it appears that the doctrine of parental immunity is still alive and well in Texas insofar as it might apply to actions by an unemancipated minor against that minor's parent for, in the words of the *Felderhoff* Court, "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." 473 S.W.2d at 933.

Appellants acknowledge the state of the law in Texas. However, they say the negligent operation of a motor vehicle by a parent which proximately causes injury to a child of such parent should not be classified as a "reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child," and they ask us to hold that the doctrine of parental immunity does not bar an unemancipated minor child in Texas from bringing such a suit.

■ In support of their position, they advance the following legal propositions:
(1) The concept of legal identity or unity does not exist in the parent-child relationship.
(2) An adult child may sue his parent for negligent injury.
(3) A minor child may sue his parent in contract.
(4) A minor child may sue his parent for injury to the child's property.
(5) The minor child can delay action until he attains his majority and sue the parent, the same as can minor strangers injured by the negligence of the parent.
Considering these propositions, they conclude there is no valid reason for continuation of a bar to a suit by minor children

against their parents for the recovery of their injuries, and point out that parents can now buy liability insurance to protect everyone injured by their negligent driving, except their own children, "regardless of how seriously injured, maimed, disfigured and crippled for life his child or children may be by reason of the parent's negligent operation of a motor vehicle." Parenthetically, while appellants place considerable emphasis in their argument upon the prevalence of mandatory liability insurance, and ask us to do so, we do not agree that we can consider the probable existence of liability insurance in making our decision. Both by case decision and by the Texas Rules of Civil Evidence we are expressly directed that we may not consider the probable existence of insurance in making a determination as to the liability of a defendant. *See Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962); Tex.R.Civ.Evid. 411.

■ Discussion of appellants' contention also requires us to note the *Felderhoff* explication of "parental duties" as including such obligations as the provision of a home, food, schooling, family chores, medical care, and *recreation.* Since the trip here involved was for a vacation, it would appear to be of a recreational nature and included within that Court's definition of "parental duties" protected by parental immunity.

In support of their argument that the time has now arrived for a further limitation upon parental immunity, appellants place heavy reliance upon *Rousey v. Rousey,* 499 A.2d 1199, 1202 (D.C.App.1985), wherein the Court conducted a considerable expedition into the origin and development of the parental immunity doctrine, as well as the recent defections from the support of the doctrine. That Court came to the conclusion that the parental immunity doctrine would serve no purpose in a suit such as that one, where "the parent against whom suit is brought has liability insurance." *Id.* However, the influence of that decision upon us is lessened by two factors which were influential in that Court's decision, but do not exist in the instant case. First, as we pointed out above, in this State

we may not consider the existence or non-existence of liability insurance in arriving at our decision. Second, as that Court specifically noted, it arrived at its decision in the "absence of any controlling case law either way" in its jurisdiction. *Id.*

Appellants also rely heavily upon two cases from the Supreme Court of Ohio, *Shearer v. Shearer,* 18 Ohio St.3d 94, 480 N.E.2d 388 (1985) and *Kirchner v. Crystal,* 15 Ohio St.3d 326, 474 N.E.2d 275 (1984). In *Kirchner,* the Court, in a learned and well-researched opinion, abolished the parental immunity doctrine in that state. In its discussion, it documented the spread of the doctrine from its origin in *Hewelette v. George,* 68 Miss. 703, 9 So. 885, throughout the nation.

The Court in *Kirchner* noted the four basic justifications usually relied upon by proponents of parental immunity. They are: (1) the doctrine will preserve the domestic peace, harmony and tranquility of the family unit; (2) the doctrine inhibits possible interference with parental discipline and control; (3) the doctrine hinders the potential depletion of the family funds; and (4) the doctrine prevents the possibility of fraud and collusion. 474 N.E.2d at 276. The Court went on to find "these rationalizations underlying the doctrine of parental immunity to be outdated, highly questionable and unpersuasive." *Id.* The Court stated that "[b]y eliminating the anachronistic doctrine of parental immunity in Ohio, we join the modern trend of legal thought established by those courageous jurisdictions which have abolished the doctrine in its entirety." *Id.* at 278.

In *Shearer v. Shearer,* 480 N.E.2d at 388, the Ohio Court, justifying its abolition of parental immunity and reaffirming that abolition, again engaged in a lengthy discussion of the origin of that doctrine. The Court stated that the justification for its imposition had been by the statement of the doctrine as a maxim, with the reasoning supporting that maxim advanced on an *a priori* basis. *A priori* reasoning is defined as "deducing consequences from a principle regarded as self-evident," *i.e.,* that suits between parents and children

will lead to family disharmony. *Id.* at 391. However, the Court reasoned that such *a priori* reasoning has not always been useful in legal analysis, positing the *pronunciamento* of Justice Oliver Wendell Holmes that "[t]he life of the law has not been logic, it has been experience." 480 N.E.2d at 391 (citing Holmes, The Common Law (1881)).

Following that line of reasoning, the Court posited the proposition that if the doctrine of parental immunity was a good and useful one, the experience of the law would empirically establish the wisdom of that doctrine. Surveying the growing tendency to abrogate the doctrine and the experience of states that never adopted the doctrine, the Court came to the conclusion that "[t]o continue to deny access to the courts on the grounds of 'what may be,' in the face of overwhelming experience to the contrary in the many other states, is nothing more than a denial of due process." *Id.* at 391. It is also a matter of some interest, and following much the same reasoning, that the *Shearer* Court went on to abolish the doctrine of interspousal immunity. *Id.* at 396.

Proper consideration of appellants' argument also requires us to note the recent decision of our Supreme Court in *Price v. Price,* 732 S.W.2d 316 (Tex.1987) abolishing the doctrine of interspousal immunity in Texas. The persuasive impact of that decision upon the question before us is heightened by the Court's extensive discussion, and rejection, of the propositions that to permit such suits would be to undermine domestic tranquility and increase the danger of false, collusive and fraudulent claims. Similar propositions have historically been advanced in support of parental immunity.

Nevertheless, we conclude we must overrule appellants' points of error. This follows for two basic reasons. First, we continue to believe that the complete abolition of the doctrine would have a detrimental effect upon the familial relationship if, for example, suits were permitted upon such matters as the imposition of parental discipline not rising to the status of physical

mistreatment. It could involve the court system in such intricate questions as whether a parent was negligent in failing to take proper steps to ensure that his or her child received a proper diet, whether a parent negligently failed to give his or her child the proper love and affection to enable that child to avoid the use of drugs or to enable the child to properly develop its mental or physical abilities, and other questions of a like nature. While at first blush these concerns might appear to be inconsequential, in today's litigious society we are convinced that they are matters of valid concern and worthy of mature consideration.

Second, it is our conviction that as an intermediate appellate court, it is not our function to "make policy" and encroach upon a doctrine iterated and reiterated by our Supreme Court. That is a prerogative reserved to that Court to be exercised in its discretion. If the Court really feels that it is necessary and proper that changes should be made in the definition and extent of the doctrine of parental immunity, it is in a position to do so, and may do so in such a manner as to clearly define to the bench and bar of Texas the nature and extent of any such changes.

In summary, appellants' points of error are overruled and the judgment of the trial court affirmed.