Christopher Ramirez v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-103-CR

     CHRISTOPHER RAMIREZ,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the County Court
Bosque County, Texas
Trial Court # 12562
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Appellant Christopher Ramirez pleaded guilty to driving while intoxicated and was sentenced
to ninety days in the Bosque County Jail and a $700 fine, probated for two years. See Tex. Pen.
Code Ann. § 49.04(b) (Vernon 1998). 
      Ramirez presents two related issues on appeal and complains that the trial court erred when
it overruled his motion to suppress because the police did not have reasonable suspicion or
probable cause to believe that he had committed or was committing an offense at the time they
detained him.
      We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
      During the early morning hours of August 25, 1996, Deputy David Booker and Deputy
Constable Kim Dagley were on duty at the Bosque County Sheriff’s Department. At
approximately 1:30 a.m., the dispatcher on duty told Booker and Dagley that she had just heard
a woman’s screams, originating from a nearby roadside park. Booker and Dagley ran outside the
sheriff’s office and saw two vehicles, parked side-by-side at the park. As Booker and Dagley
drove to the park, they observed the two vehicles speed off. Booker and Dagley stopped and
detained one of the vehicles, a small blue truck, while a Meridian police officer stopped the other
vehicle. Booker and Dagley subsequently arrested Ramirez, the driver of the small blue truck,
for driving while intoxicated.
      Before trial, Ramirez filed two motions to suppress. His first motion asked the trial court to
suppress his intoxilyzer results on the ground that he was not given the correct statutory warnings. 
His second motion asked the trial court to suppress any and all evidence obtained by the State as
a result of its illegal seizure. Ramirez claimed that the State lacked reasonable suspicion or
probable cause to believe that he was engaged in criminal activity at the time he was pulled over
and detained. After the trial court denied Ramirez’s motions, he pleaded guilty to driving while
intoxicated. Ramirez, in compliance with Texas Rule of Appellate Procedure 25.2(b)(3)(B)


, filed
his notice of appeal.
STANDARD OF REVIEWWhen reviewing a trial court’s ruling, we must first determine the applicable standard of
review. Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). At a motion to suppress
hearing, the trial court is the trier of facts and the sole judge of the credibility of the witnesses and
the weight to be given their testimony. Id. at 89. The amount of deference an appellate court
must accord a trial court’s ruling on a mixed question of law and fact is determined by which
judicial actor is in a better position to decide the issue. Id. If the issue involves the credibility and
demeanor of witnesses, compelling reasons exist for allowing the trial court to apply the law to
the facts and affording the trial court’s determination almost total deference. Id. at 87; Loserth
v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998). However, when the issue is one where
the trial court is not in an appreciably better position than the appellate court, such as reasonable
suspicion or probable cause determinations, we review the trial court’s rulings de novo while
affording total deference to the trial court’s determination of the historical facts. Loesch v. State,
958 S.W.2d 830, 831-32 (Tex. Crim. App. 1997); Guzman, 955 S.W.2d at 87; State v. Tarvin,
972 S.W.2d 910, 911 (Tex. App.—Waco 1998, pet. ref’d).REASONABLE SUSPICION/ PROBABLE CAUSERamirez’s two related issues claim that the trial court erred when it overruled his motion to
suppress because Booker and Dagley did not have reasonable suspicion or probable cause to detain
him.
      An officer may stop and briefly detain a person for investigative purposes if the officer has
a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. Terry
v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1885, 20 L.Ed.2d 889 (1968); Davis v. State, 947
S.W.2d 240, 244 (Tex. Crim. App. 1997). When examining the totality of the circumstances, an
officer has reasonable suspicion when he has specific articulable facts, which taken together with
rational inferences from those facts and his experience and personal knowledge, lead him to
conclude that the person detained actually is, has been, or soon will be engaged in criminal
activity. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); Davis, 947 S.W.2d at 244. 
The officer’s facts must amount to more than a hunch or suspicion of criminal activity. Davis,
947 S.W.2d at 244. The articulable facts that the officer relies upon must create some reasonable
suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to
connect the defendant to the unusual activity, and some indication that the unusual activity is
related to a crime. Id.; Tarvin, 972 S.W.2d at 912.
      Ramirez states that because Booker and Dagley did not hear the screams, did not have a
description of the person who screamed, and did not see him commit any traffic violations in the
park, they did not have reasonable suspicion to stop and detain him. Ramirez claims that Booker
and Dagley detained him solely based upon the dispatcher’s statement that she heard screams
coming from the park and that this is not reasonable suspicion justifying detention. 
      An officer who detains a suspect based solely upon a radio dispatch or request must show that
the dispatching or requesting officer had reasonable suspicion or probable cause. See Rance v.
State, 815 S.W.2d 633, 635 n.2 (Tex. Crim. App. 1991); State v. Jennings, 958 S.W.2d 930, 933
(Tex. App.—Amarillo 1997, no pet.). In our present case, Booker and Dagley did not rely
exclusively upon the dispatcher’s request. After Booker and Dagley responded to a report of a
woman’s screams late at night in a park, they observed two cars in the vicinity of the reported
screams, parked side-by-side, abruptly drive away when they approached the cars. Thus, Booker
and Dagley formulated reasonable suspicion to detain Ramirez and we do not need to determine
whether they also had probable cause to detain him. See Davis, 947 S.W.2d at 244; Jennings, 958
S.W.2d at 933.
      We overrule Ramirez’s issues.
      We affirm the judgment of the trial court. 
 
                                                                               REX D. DAVIS
                                                                               Chief Justice
 
Before   Chief Justice Davis
            Justice Vance
            Justice Gray
Affirmed
Opinion delivered and filed August 25, 1999
Do not publish



 hands of a parent or stepparent. Although we believe that
current law dictates the latter course, we also believe that the doctrine of parental immunity
protects parents and most stepparents against the plethora of lawsuits that we otherwise fear. 
RES JUDICATA
          Michael's first point asserts that John's claims are barred by the agreement that was
reached at the time of his divorce from Diane. 
          Res judicata is the generic term for a group of related concepts concerning the conclusive
effects given final judgments. Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). 
Within the doctrine, there are two principle categories: (1) claim preclusion (also known as res
judicata); and (2) issue preclusion (also known as collateral estoppel). Id. Claims preclusion
prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as
related matters that, with the use of diligence, should have been litigated in the prior suit. Id. 
Issue preclusion prevents relitigation of particular issues already resolved in a prior suit. Id. The
elements of claims preclusion, or res judicata, are: (1) a prior final judgment on the merits by a
court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a
second action based on the same claims as were raised or could have been raised in the first action. 
Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996). Generally, people are not bound
by a judgment in a suit to which they were not parties. Id. The doctrine of res judicata creates
an exception to this rule by forbidding a second suit arising out of the same subject matter of an
earlier suit by those in privity with the parties to the original suit. Id. at 652-53.
          People can be in privity in at least three ways: (1) they can control an action even if they
are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can
be successors in interest, deriving their claims through a party to the prior action. Id. at 653. To
determine whether later plaintiffs are in privity with prior plaintiffs we examine the interests the
parties shared. Id. Privity exists if the parties share an identity of interests in the basic legal right
that is the subject of litigation. Id. To determine whether a prior suit and one under review
involve the same basic subject matter, we focus on the factual basis of the complaint. Id. If the
second plaintiffs seek to relitigate the matter which was the subject of the earlier litigation, res
judicata bars the suit even if the second plaintiffs do not allege causes of action identical to those
asserted by the first. Id. Res judicata also precludes a second action on claims that arise out of
the same subject matter and which might have been litigated in the first suit. Id.
          Applying these principles to Michael's claim of res judicata, we find that it fails because
John was not a party to the prior divorce case, nor was he in privity with Diane, who was a party
to the divorce case and to the agreement.


 See id. Not only is the "basic subject matter" in this
case wholly different from that involved in the divorce case, the agreement actually preserved
John's claims for future litigation. See id. 
          Michael asserts, without authority, that John ratified the agreement during his testimony
at trial. We have reviewed the statement of facts on this point, and we disagree. Point one is
overruled.
LEGALLY-INSUFFICIENT EVIDENCE
          In points two and three, Michael says that the evidence is legally insufficient to support the
jury's findings of negligence and gross negligence, and thus to support the court's judgment,
because all of the bad acts John alleges were, as a matter of law, intentional rather than negligent.



          When the complaining party raises a "no-evidence" point challenging the legal sufficiency
of the evidence to support a finding that favors the party who had the burden of proof on that
finding, the reviewing court must sustain the finding if, considering only that evidence and the
inferences which support the finding in the light most favorable to the finding and disregarding
evidence and inferences to the contrary, any probative evidence supports it. Browning-Ferris, Inc.
v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). If there is more than a scintilla of evidence to
support the finding, the no-evidence challenge fails. Id. "When the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion of [the fact's]
existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." Heldenfels
Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). 
          The jury found that Michael had assaulted John and awarded him damages for that
intentional conduct. Michael does not complain of that part of the judgment. The punitive-damages question was conditioned on an affirmative finding of either intentional conduct or gross
negligence. Because Michael does not attack the affirmative finding of intentional conduct, the
punitive damages will stand. Thus, regardless of our decision, John will recover judgment for the
actual damages and punitive damages that the jury awarded for the intentional torts.
          The Texas Supreme Court has decided that there is no general duty not to negligently
inflict emotional distress. Boyles v. Kerr, 855 S.W.2d 593, 594 (Tex. 1993). Thus, John has no
claim for negligent infliction of emotional distress. Boyles does not, however, affect a claimant's
right to recover mental anguish damages caused by a defendant's breach of some other legal duty. 
Id. at 597. Because John became addicted to alcohol and drugs, which resulted in medical
expenses for hospitalization and treatment, the negligence he claims resulted in damages beyond
mental anguish. Thus, Boyles does not bar his claim. See id.
          Michael argues that all of the supposedly negligent acts, including providing alcohol to
John, showing him objectionable materials, and performing sexual acts in his presence were so
intertwined with the assaultive conduct as to be intentional acts. John agrees that the assaults were
intentional, but he argues that the evidence of Michael's (a) indiscriminate watching of sexually-explicit videos, (b) acts of self-gratification in front of John, and (c) making alcoholic beverages
available to John were negligent acts, distinguishable from the intentional acts that constituted
assaults. His brief urges us to approve the negligence finding because of negligent acts "separate
and apart" from the acts of sexual molestation. Having examined the entire record, we agree with
Michael that many of the non-contact acts were simultaneous with and thus closely connected with
the assaults and should be considered as a part thereof.



          The record reveals that some acts were, as John asserts, "separate and apart" from the
sexual misconduct. With respect to those separate acts, our decision turns on whether we must,
as a matter of law, infer that Michael intended to injure John. The fundamental difference
between negligent injury or grossly negligent injury and intentional injury is the specific intent to
inflict injury. Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex. 1985). Intent means that
"the actor desires to cause consequences of his act, or that he believes that the consequences are
substantially certain to result from it." Id. (quoting 
Restatement (Second) of Torts § 8A (1965)).
          We find State Farm Fire & Cas. Co. v. S.S. to be instructive on the question of when intent
to harm will be inferred. 858 S.W.2d 374 (Tex. 1993). In State Farm, the trial court had granted
a summary judgment in favor of the insurance company declaring that a homeowner's policy did
not provide coverage for certain claims asserted against its insured. Id. at 375. Those claims
arose out of consensual sexual activity that resulted in the claimant's being infected with genital
herpes. Id. The issue before the Supreme Court was whether, as a matter of law, the transmission
of genital herpes was an intentional injury which came within the "intentional injury exclusion"
of the homeowner's policy such that the claim was not covered. Id. at 376. The Court focused
on whether an issue of material fact existed about whether the insured knew at that time with
substantial certainty that he would transmit herpes to the claimant. Id. at 379. Because it
determined that such an issue of fact did exist, the summary judgment was reversed. Id. 
          The Court addressed State Farm's contention that, even if the insured did not intend to
injure the claimant by his conduct, his intent to injure her should be inferred as a matter of law:
 Jurisdictions which infer intent in sexual misconduct cases usually do so only in
instances of sexual misconduct with minors or forcible sex acts between adults. [Footnote
omitted.] Those jurisdictions reason that intent to injure may be inferred only when the
character of an act is such that the "degree of certainty that the conduct will cause injury
is sufficiently great to justify inferring intent to injure as a matter of law." Loveridge v.
Chartier, 161 Wis.2d 150, 468 N.W.2d 146, 151 (1991); see also Woida v. North Star
Mut. Ins. Co., 306 N.W.2d 570, 573 (Minn.1981) (inferring intent when the actions were
of a calculated nature); Milbank Ins. Co. v. B.L.G. & M.M.D., 484 N.W.2d 52, 58
(Minn.Ct.App.1992) (refusing to address inferred intent without a finding that the
defendant engaged in sexual conduct knowing it was highly certain that he would infect the
plaintiff). However, "[t]here is no bright-line rule to determine when intent to injure
should be inferred as a matter of law. Rather, each set of facts: `must be considered on
a case-by-case basis; the more likely harm is to result from certain intentional conduct, the
more likely intent to harm may be inferred as a matter of law.' " Loveridge v. Chartier,
468 N.W.2d at 151 (quoting K.A.G. v. Stanford, 148 Wis.2d 158, 434 N.W.2d 790, 793
(Ct.App.1988)).
Id. 
          State Farm reasserts the rule that whether a person intends to injure another person is
ordinarily a question of fact uniquely within the realm of the factfinder. Id. at 378. Each case is
to be considered on its individual facts—there is no bright-line rule. Id. at 379. A guiding
principle is: the more likely harm is to result from certain intentional conduct, the more likely
intent to harm may be inferred as a matter of law. Id. When there is sexual misconduct with a
minor, intent to harm should be inferred. Id. 
          To the extent that the jury found other acts committed by Michael that were not intertwined
with the sexual misconduct, the court's charge allowed the jury to determine that those acts were
unreasonable under the circumstances and were acts of negligence. The charge also allowed the
jury to award damages accordingly. Separating the intentional acts from the negligent acts was
a task that we understand to be assigned to the jury by the State Farm opinion. Id. at 378. The
standard of review requires us to uphold the jury's finding if the record contains more than a
scintilla of evidence to support it.


 Browning-Ferris, 865 S.W.2d at 928. We believe there is
some probative evidence of acts that occurred independently of the assaults—specifically those in
providing alcohol and objectionable materials to John—to support the jury's finding that Michael
was negligent. We overrule points two and three. 
PARENTAL IMMUNITY
          Michael's fourth point asserts that the doctrine of parental immunity bars John's negligence
claims. Two questions are presented: (1) to what types of conduct does the doctrine apply; and
(2) should the doctrine protect stepparents?
          For much of this century the doctrine of parental immunity absolutely protected parents
from suits by their minor children. Felderhoff v. Felderhoff, 473 S.W.2d 928, 930 (Tex. 1971). 
Now, however, parental immunity does not protect a parent against intentional acts. Id. at 930-31. 
Thus, parents have no immunity for assaults on their children. 
          In Felderhoff, the Supreme Court "set the boundaries for parent-child litigation." Jilani
v. Jilani, 767 S.W.2d 671, 672 (Tex. 1988) (quoting Felderhoff). The Court "retained the
immunity rule with respect to `alleged acts of ordinary negligence which involve a reasonable
exercise of parental authority or the exercise of ordinary parental discretion with respect to
provisions for the care and necessities of the child.'" Id. The rationale is that the right of the
parent to use discretion in the discharge of these parental duties could be "seriously impaired" if
the parents could be held liable for ordinary negligence that occurs while discharging those
parental duties. Id. 
          The Supreme Court has recognized three exceptions to the doctrine of parental immunity:
(1) intentional or malicious acts; (2) acts committed by parents in an employer-employee
relationship with their child; and (3) the negligent operation of an automobile. Hoffmeyer v.
Hoffmeyer, 869 S.W.2d 667, 668 (Tex. App.—Eastland 1994, writ denied).
          The jury found that Michael assaulted John and awarded damages accordingly. We pointed
out earlier that this finding covers many of the acts about which John complains. The remaining
acts encompassed within the finding of negligence do not fall within any of the three exceptions
that the Supreme Court has recognized. Id. Thus, a parent is immune from liability for this type
of conduct.


 
          We now turn to the question of whether Michael, as a stepparent, may invoke the doctrine
of parental immunity. In support of his position, Michael cites a single Texas case applying the
doctrine to a stepparent, i.e., Hall v. Martin, 851 S.W.2d 905, 910 (Tex. App.—Beaumont 1993,
writ denied), cert. denied, — U.S. —, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994). John says that
the doctrine should not be available to a stepparent, who has no legal duty to support a stepchild. 
He also says that the Beaumont Court simply assumed that the doctrine applied to the stepparent
and, in any event, applying it was not necessary to the decision.
          The record reveals that John never knew his biological father, who had died two months
before his birth. Michael and Diane married when John was approximately eighteen months old. 
Michael and Diane divorced when John was seventeen. Thus, Michael was, according to Diane,
"the only father figure that John had ever known." Diane testified that Michael asked about
adopting John after they were married, but she "want[ed] him to keep his father's name." 
Consistent with the position of the Beaumont Court, we hold that the doctrine of parental immunity
applies to a stepparent in Michael's position. Id.
          In summary, the intentional acts are excepted from the doctrine of parental immunity. 
Felderhoff, 473 S.W.2d at 930-31. The remaining acts, which the jury found to be negligent, do
not fall within a recognized exception to the doctrine of parental immunity. Thus, John may not
recover for them.


 Id. We sustain point four.
          Because Michael is protected by the doctrine of parental immunity from liability for the
acts constituting negligence, we will reform the judgment to eliminate the actual damages that the
jury awarded in connection with the negligence finding.
MICHAEL'S COUNTERCLAIM
          As we have noted, in an agreement that Diane signed individually, she agreed to (1) hold
Michael harmless from liability on any judgment that she or John might recover that was not
covered by insurance and (2) not to enforce any such judgment against Michael through legal
processes. Michael filed a counterclaim against Diane and John for a declaratory judgment
seeking "a construction of the Covenant Not to Enforce under the Uniform Declaratory Judgments
Act that [Michael] has been released from liability to [Diane and John], that an accord and
satisfaction has been reached in whole or in part, and that he has no personal liability to [Diane
and John]." The court declined Michael's request to make findings about the agreement and
incorporate them into the judgment. As far as we can determine, the court found only that John's
claims were not barred by the agreement. In points five and six, Michael complains of the court's
overruling his request and in "failing to find that Michael McGee is not personally liable on the
judgment."
          Because John was not a party to the divorce suit or the agreement, he is not bound by its
terms. Thus, the court was correct in determining that the agreement did not bar his claims. 
          Michael asserts on appeal that the interpretation of the agreement is a question of law. 
Accepting that assertion, findings of fact would have been inappropriate. See R & P Enter. v.
LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980) (If a written instrument is so
worded that it can be given a certain or definite legal meaning or interpretation, then it is not
ambiguous and the court will construe the contract as a matter of law.). The agreement binds
Diane to (1) hold Michael harmless from liability on any judgment that she or John might recover
that was not covered by insurance and (2) not enforce any such judgment against Michael through
process, turnover orders, garnishments, or other writ or process of every type or character and
every type of court proceeding. The agreement does not provide that Michael "has been released
from liability to [Diane and John], that an accord and satisfaction has been reached in whole or
in part, and that he has no personal liability to [Diane and John]." Having no basis on which to
grant the relief that Michael requested, the court did not err in failing to enter judgment that
Michael is not personally liable. We overrule points five and six.
CONCLUSION
          We have found that parental immunity protects Michael from liability for negligence
towards John, even though he is a stepparent. Thus, we must reform the judgment to eliminate
the actual damages of $50,000 which the jury found to have resulted from the negligent acts. 
          The judgment is reformed to provide: (1) Plaintiff, John Deston Bardin, Jr., have and
recover of and from Defendant, Michael Joseph McGee, the sum of $125,000; (2) he also recover
prejudgment interest at the rate of ten percent per annum from August 6, 1993, until November
3, 1995, on the actual damages of $20,000; and (3) he recover postjudgment interest at the rate
of ten percent per annum from November 3, 1995, until paid, on the sum of $125,000, for all of
which let execution issue.
          As reformed, the judgment is affirmed.
           
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Reformed and affirmed
Opinion delivered and filed November 6, 1996
Publish